James I. McMillan, CBN: 68584
4955 Via Lapiz
San Diego, CA 92122

Office: 858-646-0069
Direct: 858-412-0058
Fax: 206-600-4582
Email: jimcmillan@netscape.net


JAMES I. MCMILLAN, **in propria persona**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James I. McMillan,<br>            Plaintiff,<br><br>    vs.<br><br>Anderson Fire Protection District, Steve Lowe, City of Anderson, Anderson Police Officer1, Jail Nurse DOE1, Jail Nurse DOE2, Shasta County Sheriff Thomas M. Bosenko ret., , and County of Shasta.<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>42 U.S.C.  1983<br><br>State Claims re: Elder Abuse<br>Welfare and  Institutions Code § 15657<br><br>JURY TRIAL DEMANDED |

# THE PARTIES TO THIS COMPLAINT

1.    The Plaintiff

|  |  |
|---|---|
| Name | James I. McMillan |
| Street Address | 6059 Dirac Street |
| City and County | San Diego, San Diego County |
| State and Zip Code | California  92122 |
| Telephone Number | (858) 646-0069 |

2.    The Defendants

a.   
|  |  |
|---|---|
| Name | Steve Lowe |
| Street Address | 1925 Howard Street |
| City and County | Anderson, Shasta |
| State and Zip Code | California, 96007 |
| Telephone Number | (530) 378-6699 |

b.   
|  |  |
|---|---|
| Name | Anderson Fire Protection District |
| Street Address | 1925 Howard Street 96007 |
| City and County | Anderson, Shasta |
| State and Zip Code | California, 96007 |
| Telephone Number | (530) 378-6699 |

c.   
|  |  |
|---|---|
| Name | Anderson Police Officer1 |
| Street Address | 2220 North Street, |
| City and County | Anderson, Shasta |
| State and Zip Code | California, 96007 |
| Telephone Number | (530) 378-6600 |

d.   
|  |  |
|---|---|
| Name | City of Anderson |
| Street Address | 1887 Howard Street |
| City and County | Anderson, Shasta |
| State and Zip Code | California, 96007 |
| Telephone Number | (530) 378-6626 |

e.   
|  |  |
|---|---|
| Name | Jail Nurse DOE1 |
| Street Address | 1655 West St. County Jail |
| City and County | Redding, Shasta |
| State and Zip Code | California, 96001 |
| Telephone Number | (530) 245-6100 |

f.   
|  |  |
|---|---|
| Name | Jail Nurse DOE2, |
| Street Address | 1655 West St. County Jail |
| City and County | Redding, Shasta |
| State and Zip Code | California, 96001 |
| Telephone Number | (530) 245-6100 |

/ / /

/ / /

2

g.  Name  Shasta County Sheriff Thomas M Bosenk, retired
Street Address          unknown
City and County         unknown
State and Zip Code      unknown
Telephone Number        unknown

h.  Name                County of Shasta
Street Address          1450 Court Street, Suite 308B
City and County         Redding, Shasta
State and Zip Code      California, 96001
Telephone Number        (530) 225-5550

## BASIS FOR JURISDICTION AND VENUE

3.    This Court has original Federal Question Jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, over Plaintiff's claims for Violation of Civil Rights 42 U.S.C. §1983.

4.    The acts and omissions alleged in this COMPLAINT FOR DAMAGES (hereinafter "Complaint") occurred in the County of Shasta and it is believed that all parties and public entity parties currently reside in or are situated in the County of Shasta. Venue is therefore proper in the Eastern District of California.

## PRELIMINARY FACTS

5.   The plaintiff James I. McMillan (McMillan) born July 25, 1941, was 77 years old on March 7,  2019, is approximately 6 feet and 3 inches tall, and weighed approximately 245 lbs at the time of his arrest.  In addition he was suffering from various other documented medical conditions, including diabetes, high blood pressure, and heart arrhythmia which all require regularly scheduled prescribed medication.   McMillan lives in San Diego, California.

### ANDERSON FIREMEN ARRIVE

6.   At about 10 p.m. McMillan saw a fire truck in the street in the front of 1892 Diamond Street, Anderson, California.  McMillan went out and saw a group of 6 or so firemen standing in the driveway.  He asked what was going on.  One of the firemen said a fire had been reported at the address.  McMillan told the firemen there was no fire.  One of the group demanded to look.  McMillan accompanied the group to the backyard, unlocking a gate. There was no fire.

3

**COMPLAINT FOR DAMAGES - 42 U.S.C. §1983**

There were three small metal 8 oz coffee cans near each other sitting on the bottom of a nearly empty large concrete swimming pool.

7.   The firemen returned to the driveway in front of the house and McMillan locked the side gate and went back inside the home.  After maybe 10 minutes passed one of the firemen came and banged on the front door.  McMillan answered the door and was told to come out into the driveway,  that the firemen were not through with him.  McMillan, escorted by the fireman who fetched him, went to the driveway where the group of firemen were standing. Their demeanor seemed hostile and aggressive.

8.   At that point McMillan noticed that Anderson Fire Chief Steve Lowe (Fire Chief Lowe) was now present, wearing a badge and official accouterments.  Apparently the Firemen had been chatting with the Fire Chief for a few minutes before McMillan was informed that the firemen were not finished talking with him.   Four City of Anderson police officers also arrived about that time.  Fire Chief Lowe ask McMillan no questions concerning any activity McMillan might have been involved in, but then, in a hostile and aggressive tone demanded that McMillan provide his name and age, and that McMillan present his driver's license. McMillan provided his name and also indicated that he lived in San Diego but refused to provide any further information, including his age or driver's license.

9.    McMillan, calmly explained that he had not been driving and that a driver's license was only required to be produced on demand by a peace officer in connection with the operation of a motor vehicle.  Fire Chief Lowe became visibly upset.

10.   Anderson Police Officer1 pulled out his cell phone, verified McMillan's address and obtained his age, passing along the information to Fire Chief Lowe.

11.   Without any further discussion Fire Chief Lowe prepared a citation citing two code violations.  Acting under color of law, Fire Chief Lowe falsely charged McMillan without

4

**COMPLAINT FOR DAMAGES - 42 U.S.C. §1983**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

probable cause with violations of 42400.2(c)HS [1]  and 148(A)(1) PC.  Fire Chief Lowe then handed the citation to McMillan to sign which McMillan refused to sign without hearing any explanation of the charges.  Fire Chief Lowe became even more upset.   McMillan was arrested and incarcerated in the Shasta County Jail for about 27 hours, from about 11p.m. Thursday, March 7, 2019 until about 2 a.m. Saturday, March 9, 2019.  McMillan first learned of the specific code violations he had been cited for upon release from Shasta County Jail where the violations were identified on the "Agreement on Release" form, but still no explanation as to the contents of the cited codes.

## ANDERSON POLICE OFFICER ARRESTS  MCMILLAN

12.    Immediately after McMillan refused to sign the citation prepared by Fire Chief Lowe, Officer1 stepped up, before any further discussion with anyone occurred Officer1 handcuffed McMillan placing him under arrest.  None of the defendants had a search warrant.  Without checking other pockets Officer1 went directly to McMillan's left hip pocket where a bulge indicated a wallet, seized McMillan's wallet, pulled out his driver's license and examined it.  Officer1 then replaced the license in the wallet and stuffed the wallet back into McMillan's jacket pocket without checking more pockets for anything else or commenting.

13.    Without further discussion with anyone, Officer1 then took McMillan to his police cruiser, opened a door to the back seat and ordered McMillan to get in.  McMillan objected that

---

[1]  **California Code, Health and Safety Code - HSC § 42400.2( c )**
"(c) Any person who owns or operates any source of air contaminants in violation of Section 41700 that causes actual injury, as defined in subdivision (d), to the health or safety of a considerable number of persons or the public is guilty of a misdemeanor and is subject to a fine of not more than fifteen thousand dollars ($15,000) or imprisonment in the county jail for not more than nine months, or both."

**California Penal Code § 148.(a) (1)**
 "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

**COMPLAINT FOR DAMAGES - 42 U.S.C. §1983**

the handcuffs were too tight. Officer1 said they were not, that he had checked them. The cuffs were sufficiently tight that McMillan was unable to bend his arms at the elbow to maneuver into the back seat from a standing position.  McMillan was too tall to just sit down. The driver's seat was back too far, leaving no room for McMillan's knees to fit between the back of the back seat and the back of the front seat, about 15 inches. Officer1 offered McMillan no assistance getting into the vehicle whatsoever, and again just ordered McMillan to get in the car.

14.   Officer1 then said he was going to shut the door which would hit McMillan.  At that point McMillan just dropped into the back seat lengthwise twisting to his right side without any way to cushion his fall.  The fall caused intense pain in McMillan's shoulders as his 245 pound body hit the hard plastic back seat, twisting his arms – causing him great physical pain and injury. Officer1 then told McMillan to get his feet inside that he was going to shut the door.  McMillan wiggled into the car more. When Officer1 shut the door it shoved McMillan's feet into the car causing pain in McMillan's right knee due to a prior recent injury.

15.  Due to his physical size and the fact that his hands were cuffed behind his back, McMillan was unable to sit upright in the vehicle. Instead, he was left laying painfully on his right side scrunched up on the hard plastic bench that comprised the back seat of Officer1's police cruiser.

16.   Officer1 left McMillan, laying on his side handcuffed and suffering intense physical pain in the car for in excess of ten minutes, while Officer1 chitchatted with the other police officers and firemen, including Fire Chief Lowe. Officer1 finally returned to the vehicle, opened the back door and with a tormenting tone asked McMillan "Are you ready to sign?" McMillan responded "No." whereupon Officer1 closed the back door, got in the car and headed to the Shasta County Jail about 10 miles away in Redding, California.

17.  McMillan suffered great pain in his wrists and shoulder joints while twisted on his right side, with his feet jammed against the car door closed against them by Officer1 for approximately 20 minutes before being removed from the police cruiser.

18.  To date, McMillan continues to suffer pain in his left shoulder which is directly attributable to Officer1's intentionally and unnecessarily rough treatment which Officer1 inflicted merely because McMillan refused to sign Fire Chief Lowe's citation.

### MCMILLAN IS FURTHER ABUSED AT SHASTA COUNTY JAIL.

19.  Upon arrival at the Shasta County Jail in Redding, California (Jail) plaintiff was handed over to the Jail's intake person on duty who took possession of McMillan's personal property including his shoes and the contents of his pockets, including a small container of acarbose tablets, a prescribed diabetes medication.

20.  The jail intake person asked about any medical conditions McMillan had. McMillan said that he was diagnosed by a medical doctor as suffering from diabetes, high blood pressure, heart arrhythmia, and at high risk of stroke. At the time, McMillan was taking medications for all these conditions, including a prescribed blood thinner to reduce the risk of stroke. A nurse was called to interview McMillan.

21.  When the unknown yet to be identified nurse (Jail Nurse DOE1) showed up she examined McMillan's container of acarbose and ask him what it was for. He told her it was a diabetes drug. She said it was not in an original bottle and could not be taken into the jail. She threw it in the trash. She then asked McMillan what other drugs he was taking for his medical conditions. He told her as best he remembered - there were 8 or more with odd names: Acarbose to block the digestion of carbohydrate to glucose, NPH insulin a long term acting insulin to help keep blood sugar down, Nadolol for heart arrhythmia, Metformin to help keep blood sugar down, Telmisartan for high blood pressure, Verapamil for high blood pressure, plus a blood thinner to

7

prevent clotting. There were a few other prescribed medications he was taking at the time, but told Jail Nurse DOE1 that he was unable to recall their names. At no point in time did Jail Nurse DOE1 or anyone else during McMillan's confinement either make McMillan's required prescribed medications available to him or otherwise provide him with any reasonably available substitutes.

22.    Jail Nurse DOE1 then used a small device to punch a hole in one of McMillan's fingers to get a drop of blood to test his sugar level. She showed him the results on her glucose meter - 145mg/ml. McMillan told her it was high and would get higher if he were not given his diabetes medication. She ignored McMillan's pleas, and instead of taking steps to ensure he timely received his prescribed medications, she retorted "You're fine."

23.    McMillan explained to Jail Nurse DOE1 that he generally maintains his blood glucose level below 120 mg/dl, taking 15 units of NPH insulin in the evening just before bedtime and 20 units around 2 pm in the afternoon. He supplements this regimen with Acarbose and Metformin as prescribed by his treating physician. He complained to the nurse that he needed some insulin and that his blood glucose would get higher and potentially put him at great risk without insulin and/or his prescribed medications. Making no comment, the nurse went over to chat with Officer1 and the DOE jail guy. At no time did Jail Nurse DOE1 or any other person at the jail facility ever take any steps whatsoever to either provide McMillan with his necessary prescribed medications or otherwise ensure that he received them during the entirety of the time he was incarcerated in spite of being fully informed of McMillan's medical needs. Jail Nurse DOE1 was very dismissive of McMillan's various medical conditions.

24.    Jail Nurse DOE1 told McMillan diabetic meals were available but, for whatever reason jail deputies refrained from giving, or even offering him one. The food McMillan was given for breakfast, lunch and dinner on Friday, March 8th was heavily carbohydrate laden –

8

poison to a diabetic.  McMillan gave the deserts to other prisoners in the holding room, and just did not eat much of the other high carbohydrate food offered.

25.    After being searched by the intake person and having his property taken McMillan was taken by a deputy to a holding room. McMillan was given a cloth which the jailers called a "blanket," as they ordered him into the holding room and locked the door. The so called "blanket" was a thin cloth about 3/16 of an inch thick. McMillan was in the room from about 11 pm Thursday though about 2 am Saturday – a period of no less than 27 hours. The lights were never turned off, making it exceedingly difficult to sleep.

26.    The holding room was not square but was trapezoidal in shape of about 90 sq. ft. usable area of bare, cold concrete for sleeping including the bare, cold concrete benches along the two longer walls. When McMillan was placed in the holding room there were about 10 other prisoners already in the room with the addition of McMillan for a total of 11. Other prisoners who had been in the room for more than a day told McMillan that there had been more than 20 in the holding room at one time.  Another prisoner in the room said county law enforcement had been doing a drug sweep for a couple days, cracking down on methamphetamine users.  There were no bunks in the holding room.  The seating benches along two walls were cold, bare concrete about 16 inches wide.  The holding room floor was cold, bare concrete as well, and was filthy.

27.    McMillan was in the holding room for more than 24 hours, thus forced to sleep with only a small, thin 3/16" blanket for padding, warmth, and to block out the lights which were never turned off.  At McMillan's size, 6'3" and 245 lbs, the blanket was too small to serve each of those purposes at the same time. A night of fitful sleeping on concrete was not just uncomfortable, but resulted in sore spots and continuous back pain.  McMillan asked a Deputy for a second blanket, but the Deputy refused his request with the retort "Only one blanket."

28. After McMillan entered the room he noticed trash on the concrete floor in the room, empty lunch bags, empty milk cartons and food wrappers plus various scraps. The toilet paper roll was on the floor soaked.  It had been wet for some time and was never replaced during the 27 hours or so while McMillan was in the room. McMillan picked up the larger pieces of trash at some point and set those by the door for removal along with empty meal bowls.  After a few hours a deputy eventually collected the empty bowls along with the trash and swept the floor around the door and thanked McMillan for cleaning up a bit. When McMillan complained about the remaining trash, the deputy said the holding room would be thoroughly cleaned later. That did not happen in the 27 hours or so McMillan was in the holding room.

29. There were a couple short fights with punches landed between prisoners that wanted to sleep, and loud, shouting, seemingly crazed prisoners. No effort was made by the jailers to separate the prisoners with obvious symptoms of mental illness creating a predictably dangerous condition in the holding room.

30. Several hours after being placed in the holding room, a jail nurse (Jail Nurse DOE2) different from the jail nurse (Jail Nurse DOE1) who tested McMillan's blood sugar on his arrival at the jail came by the holding room to check on McMillan's blood sugar.  Predictably, it had risen to 175mg/dl from145mg/dl when McMillan was first brought into the jail a few hours earlier. As he had done with Jail Nurse DOE1, McMillan told Jail Nurse DOE2 that he needed insulin or the level would continue to go up. She said that she was aware of McMillan's medical needs.  But, neither Jail Nurse DOE1 nor Jail Nurse DOE2 nor anyone else ever provided McMillan with any of his essential prescribed medications, including his needed insulin. McMillan is informed and believes that sometime during the day Friday, March 8, 2019, McMillan's cousin, Jared Hopson attempted to deliver McMillan's prescribed medications in

original pharmacy prescription labeled bottles to the jail, but the delivery was refused by the Deputy in charge.

## MCMILLAN SUSTAINS INJURIES AT THE SHASTA COUNTY JAIL

31.     McMillan was subjected to more than 24 hours confinement in the Shasta County Jail. During this time he endured lack of sleep, the knowing and intentional withholding of essential prescription medications, and terrible living conditions causing body pain in the holding room as described above.  He was never offered a bunk or food fit for a diabetic.   Both prescribed medications NPH insulin and Metformin McMillan regularly uses to control his blood glucose level to less than 120mg/deciliter were intentionally withheld.  Despite being told by Jail Nurse DOE1 that diabetic meals were available, McMillan was not provided food fit for a diabetic, but was provided high carbohydrate meals instead while incarcerated.  The Deputies bringing the food trays, never asked or offered any specially prepared diabetic meal, offering just the same as everyone else in the holding room received.

32.     During the course of being released from the Shasta County McMillan began experiencing visual hallucinations as a result of having been deprived of his necessary prescribed diabetes medications. White surfaces appeared to be covered in mats of waving pine needle like images. He did not mention this to the Deputies out of fear he would be held for medical examination where he would likely only continue to be deprived of his medication and access to medical care. The hallucinations progressed to static images of something like Egyptian hieroglyphics on white surfaces by the time he got home about 3 a.m. on Saturday, March 9, 2019.

/ / /

/ / /

## MCMILLAN IS RELEASED FROM THE SHASTA COUNTY JAIL

33.    A Deputy Sheriff prepared the "Agreement on Release." The Deputy used a regular ball point ink pen to fill out the top portion of the "Agreement on Release," plus the "A" portion but gave McMillan a small pen to sign with that wrote in very light blue ink and was incapable of being pressed on to the paper because it was flexible. Nothing either the deputy or McMillan wrote on the form after the A portion was readable on McMillan's copy of the form "Agreement on Release."

34.    The booking charges were 42400.2(c)HS  and 148(A)(1) PC as noted above. The booking charges appeared to have been based on a full page, single spaced document that seemed to have been prepared by Anderson Fire Protection District personnel which the Deputy paused to read and study for about 15 minutes before preparing the Agreement on Release. After the Deputy finished reading the document, for some unknown reason, he shredded it.

35.    The Agreement on Release set McMillan's arraignment on May 10, 2019, at 10:00 a.m. and directed that McMillan appear at the court located at 1500 Court Street in Redding, California, and further directed that the court calendar be checked for the court room where he should appear. McMillan retained counsel and both appeared on May 10, 2019, and neither McMillan nor counsel found any mention of McMillan's name in the lists of those to be arraigned in either dept 9 or 10 at 10:00 am on May 10, 2019.  Counsel appeared along with McMillan in Dept 10, making a record of McMillan's appearance. McMillan was present and stood when counsel brought to the court's attention that McMillan had appeared pursuant to the Agreement on Release.

/ / /

/ / /

/ / /

12

**COMPLAINT FOR DAMAGES - 42 U.S.C. §1983**

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Constitutional Rights - 42 U.S.C.  1983**
**Fourth Amendment – Unreasonable Search**
**As to Defendant Officer1, City of Anderson, Fire Chief Lowe,  and**
**Anderson Fire Protection District**

36.    Plaintiff hereby incorporates by reference all other paragraphs of this complaint as if set forth in full.

37.    At all relevant times alleged herein, Defendant Officer1 was acting under color of law within the course and scope of his duties as an Anderson Police officer employed by the City of Anderson's Police Department.  Officer1 violated Plaintiff's constitutional rights when he removed McMillan's wallet and examined it without a warrant as described in paragraph 12 above which is specifically incorporated by this reference.  Officer1 committed said acts without justification or authority, and without probable cause, exigency, or court order.  Fire Chief Lowe was present as an "integral participant" [2] under color of law within the course and scope of his duties as employed by the Anderson Fire Protection District.  As a direct and proximate result of Officer1's actions, Plaintiff has suffered, and will continue to suffer, general and special damages according to proof at trial.  Due to the malicious, wanton, callous, reckless, and wrongful nature of the Defendant Officer1's misconduct as herein alleged and described, Plaintiff is entitled to recover damages from Officer1, City of Anderson, Fire Chief Lowe, and Anderson Fire Protection District, and shall seek, punitive damages.

/ / /

/ / /

/ / /

---

[2]  See "integral participant" under Boyd v. Benton County 374 F.3d 773 (9th Cir. 2004).

**COMPLAINT FOR DAMAGES - 42 U.S.C. §1983**

## SECOND CLAIM FOR RELIEF

**Violation of Constitutional Rights - 42 U.S.C.  1983**
**Fourteenth and Eighth Amendment – Cruel and Unusual Punishment,**
**Deliberate Indifference**
**Torture Inflicted by Officer1 on McMillan in Police Cruiser**
**As to Officer1, City of Anderson, Fire Chief Lowe,**
**and Anderson Fire Prevention District**

38.    Plaintiff hereby incorporates by reference all other paragraphs of this complaint as if set forth in full.

39.    McMillan is informed and believes and on that basis alleges that Officer1 was at all relevant times mentioned herein employed as a peace officer by the City of Anderson, Anderson, California in the Anderson Police Department and was acting in that capacity under color of law. Fire Chief Lowe was present as an integral participant colluding with Officer1, acting under of color of law, and was at all relevant times mentioned herein employed by the Anderson Fire Prevention District.

40.    Plaintiff hereby incorporates by reference paragraph 12 through 18 wherein the details of Defendant Officer1's wrongful and outrageous intentional infliction of pain on and injury to McMillan for the purpose of convincing McMillan to sign the citation is described and injury there from inflicted on McMillan.  At the time of Officer1's conduct, the law was so clearly established that any law enforcement officer in Officer1's circumstances would have known his conduct violated McMillan's rights under the United States Constitution.  Due to the malicious, wanton, callous, reckless, and wrongful nature of the Defendant Officer1's misconduct as herein alleged and described, Plaintiff is entitled to recover damages against Officer1, City of Anderson, Fire Chief Lowe, and Anderson Fire Prevention District, and shall seek, punitive damages.

/ / /

## THIRD CLAIM FOR RELIEF

**Violation of Constitutional Rights - 42 U.S.C.  1983**

**Fourteenth and Eighth Amendment – Cruel and Unusual Punishment,
Deliberate Indifference**
**Torture Inflicted on McMillan by Fire Chief Lowe in Police Cruiser**

41.    Plaintiff hereby incorporates by reference all other paragraphs of this complaint as if set forth in full.

42.     McMillan is informed and believes and on that basis alleges that Fire Chief Lowe was at all relevant times mentioned herein employed as a peace officer and Fire Chief by the Anderson Fire Protection District in Anderson acting under color of law.

43.   Plaintiff hereby incorporates by reference paragraph 12 through 17 wherein the details of Defendant Fire Chief Lowe's conspiracy, approval and participation with Officer1 in the confinement of McMillan are set out. At the time of Fire Chief Lowe's conduct, the law was so clearly established that any law enforcement officer in his circumstances as an integral participant would have known his conduct violated McMillan's rights under the United States Constitution.

44.   Due to the malicious, wanton, callous, reckless, and wrongful nature of the Defendant Fire Chief Lowe's misconduct as herein alleged and described, Plaintiff is entitled to recover damages, and shall seek, punitive damages.

## FOURTH CLAIM FOR RELIEF

**Violation of Constitutional Rights - 42 U.S.C.  1983**
**Fourteenth and Eighth Amendment – Deliberate Indifference**
**Denial of Prescription Medications by Jail Nurses DOE1 and DOE2,**
**AS to Jail Nurses DOE1 and DOE2, Shasta County Sheriff, and County of Shasta**

45.    McMillan is informed and believes that at all relevant times mentioned herein and upon that basis alleges that Jail Nurses DOE1 and DOE2 were employed at the Shasta County Jail

with the duty of administering to the medical needs of the prisoners incarcerated in the Shasta County Jail, and were subject to the direction and control of Shasta County Sheriff Thomas M. Bosenko who was employed by the County of Shasta to operate and oversee the operation of the Shasta County Jail.

46.    Plaintiff hereby incorporates by reference paragraphs 20 through 24 and 30-32 wherein the details of Jail Nurses DO1 and DO2 respective breaches of their duty to administer to the medical needs of McMillan are set forth.   Both nurses declined to provide prescribed medicinal drugs for treatment of serious, life threatening diseases suffered by McMillan. McMillan suffered injury from lack of his prescribed diabetic medications when afflicted with visual hallucinations.  Plaintiff seeks damages for the harm inflicted and the willful violation of his right to preventive treatment of his serious medical conditions.

47.    Due to the malicious, wanton, callous, reckless, and wrongful nature of the Jail Nurses' misconduct as herein alleged and described, Plaintiff is entitled to recover damages, and shall seek, punitive damages against each.

## FIFTH CLAIM FOR RELIEF

### Fourteenth and Eighth Amendment – Cruel and Unusual Punishment, Deliberate Indifference
### As to Shasta County Sheriff Thomas M. Bosenko

48.    Plaintiff hereby incorporates by reference paragraph 25 through 29.

49.    McMillan alleges that prisoners including Plaintiff, in the Shasta County Jail holding rooms are abused by being forced to sleep on cold concrete (benches or floor) without significant cushion for how ever long they are held in the holding room.

50.    Due to the malicious, wanton, callous, reckless, and wrongful nature of Shasta County Sheriff Thomas M. Bosenko's disregard of the holding room prisoner abuse, including Plaintiff as herein alleged and described, Plaintiff is entitled to recover damages, and shall seek,

16

punitive damages.

## SIXTH CLAIM FOR RELIEF
### 42 U.S.C. Sec. 1983 -- MONELL-RELATED CLAIMS
**As to Anderson Fire Prevention District,**
**City of Anderson, and Shasta County.**

51.     Plaintiff hereby incorporates by reference this paragraph in all other paragraphs of this Complaint as if set forth in full.  Defendants Anderson Fire Prevention District, the City of Anderson and the County of Shasta (collectively, "Entity Defendants"), are each a "person" within the meaning of 42 U.S.C. § 1983 and subject to Monell liability under *Monell v. Dept. of Social Services* (1978) 436 U.S. 658.   Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

52.     Each of the Entity Defendants had a duty to Plaintiff to establish, implement, and follow policies which confirm and provide the protections guaranteed Plaintiff under the United States Constitution. Said Entity Defendants also had the duty to use reasonable care to select, assign, supervise, train, and review the activities of all their respective agents, so as to protect Plaintiff's constitution rights and to avoid causing the injuries and damages alleged herein.  Based on the duties charged to each of the respective Entity Defendants, they knew or should have known of the obvious need to establish customs, policies and practices to protect Plaintiff from suffering the injuries and damages herein alleged. Entity Defendants established policies that served as the moving force behind the violations herein alleged, or alternatively, were deliberately indifferent to the need to establish proper policies and procedures to avoid the same. Entity Defendants, and each of them, established the following policies, procedures, customs, or practices which were the moving force behind the violations alleged:

a. The policy, custom, or practice of placing persons who refuse to produce identification under arrest, with the intention of searching such persons' bodies, papers, and

effects for such identification, without a warrant, and in the absence of exigent circumstances, or knowingly aiding and abetting the same;

b. The policy, custom, or practice of inflicting pain and mental anguish in an effort to coerce persons to sign citations issued by the Anderson Fire Prevention District, or knowingly aiding and abetting the same;

c. The policy, custom, or practice of failing to diligently obtain medical information regarding persons incarcerated at the Shasta County Jail and/or refusing to administer prescribed medication to such inmates; and

d. The policy, custom, or practice of abusing inmates of the Shasta County Jail by forcing them to sleep on cold concrete (benches or floor) without significant cushion for however long they are held in the holding room, in unsanitary and crowded conditions. (This list is not exhaustive due to the pending nature of disclosure and discovery. Plaintiff may seek leave to amend this pleading as more information becomes available.)

53.    Entity Defendants, and each of them, breached their respective duties and obligations to Plaintiff by failing to establish, implement, and follow proper Constitutional policies, customs, and procedures and by failing to properly select, supervise, train, and control their respective agents and employees regarding the same. Each of the Entity Defendants knew, or should have known, that by breaching the above-mentioned duties and obligations, the failure to implement proper policies and procedures would cause Plaintiff to be injured and damaged, and were deliberately indifferent to the need to do so.

54.    These actions and/or inactions were the moving force behind, and the direct and proximate cause of Plaintiff's injuries as alleged herein. As a result, Plaintiff has suffered general and special damages, to an extent and in an amount to be proven at trial.

**STATE CLAIMS FOR RELIEF**

**CLAIMS FOR DAMAGES WERE SUBMITTED AS REQUIRED**

**BY STATE CODE SECTONS §§ 910 *et seq*.**

55.   Paragraph 5 through 27 above are incorporated by reference as if set forth in full here.   On information and belief McMillan alleges that at all times mentioned herein:

a.  Shasta County Jail in Redding, California was and remains a department of the County of Shasta, and

b.  The Shasta County Sheriff manages the Shasta County Jail by agreement with the County of Shasta, and

c.  The Shasta County Sheriff  formulates the Shasta County Jail rules and procedures which are implemented at his direction by the Deputy Sheriffs running and managing the day to day operation of the Shasta County Jail including that of medical staff, and

d.  Thomas M. Bosenko was the Shasta County Sheriff at all times mentioned in this complaint but retired in December 2019, and

e.   Officer1, acting as a peace officer subject to department policy, direction, and practice as an employee of the Anderson Police Department in Anderson, California which was and remains a city department where operations and overall policy are ultimately subject to the control and direction of the City of Anderson, and

f.  Fire Chief Lowe, acting as a peace officer subject to department policy, direction, and practice as an employee of the Anderson Fire Protection District in Anderson, California where operations and overall policy are ultimately subject to the control and direction of the Anderson Fire Protection District, an independent agency.

Based on the allegations in paragraphs "a ." through "f ." above, claims for damages were mailed within 6 months of March 7, 2019, by plaintiff.  The claims were submitted pursuant to the provisions of *California Government Code* §§910 *et seq.* More than forty-five days have elapsed since the submission of the claims with no response; the claims are therefore deemed

rejected.  The County of Shasta rejected the claim against the county by written notice mailed October 16, 2019.

**SEVENTH CLAIM FOR RELIEF**
**Enhanced Claim for Elder Abuse for Torture of McMillan**
**As to Officer1 and Fire Chief Lowe.**

56.     Plaintiff hereby incorporates by reference paragraphs 5, and 25 through 29.

57.     McMillan alleges that at all times mentioned herein Officer1 was a peace officer in that capacity as an employee of the City of Anderson police department subject to department policy, direction, and practice.

58.     McMillan further alleges that at all times mentioned herein Fire Chief Lowe was acting on behalf of the Anderson Fire Prevention District, an independent entity.

59 .  The facts set out in the above statement of facts are incorporated by reference herein establish that James I. McMillan was older than 65 years old at the time of the conduct described in the above statement of facts, and was physically abused by Officerl acting in concert and colluding with Fire Chief Lowe when forced into the backseat of Officerl's Anderson Police car causing severe pain and injure all in violation of the Elder Abuse and Dependent Adult Civil Protection Act.[3] Further, McMillan was harmed by the acts of Officerl as described in the Statement of Facts above. Thus Officerl's and Fire Chief Lowe's conduct was a substantial factor in causing McMillan's harm. McMillan seeks damages for the harm inflicted on him which includes invasion of privacy, intentional infliction of pain, physical injury, mental suffering, emotional distress and humiliation.

60.   Further, plaintiff seeks the enhanced remedies of attorney fees and costs provided for in the California Elder Abuse and Dependent Adult Civil Protection Act against Officerl and Fire Chief Lowe.

---

[3]  California  Welfare and  Institutions Code § 15657

20

**COMPLAINT FOR DAMAGES - 42 U.S.C. §1983**

### EIGHTH CLAIM FOR RELIEF
**Enhanced Claim for Elder Abuse of McMillan**
**Failure to Provide Needed Medication and**
**Forced to Sleep on Concrete.**
**As to Shasta County Sheriff Thomas M. Bosenko**

61.    Plaintiff hereby incorporates by reference paragraphs 3, 22 through 23, and 30 through 32 as if set forth in full.

62.    Plaintiff is informed and believes that the County of Shasta contracted with the Shasta County Sheriff Thomas M. Bosenko to manage and run the Shasta County Jail.

63.    Plaintiff is informed and believes and based thereon alleges that Sheriff Thomas M. Bosenko has a policy of  ignoring pain and suffering inflicted on those in the holding cell due to ineffective padding provided inmates such as Plaintiff who was forced to sleep on cold, bare concrete. McMillan experienced unwarranted pain and suffering in the Shasta County Jail while sleeping on the cold hard concrete in the one of the Jail's holding cells.

64.    Plaintiff is informed and believes and based thereon alleges that Sheriff Thomas M. Bosenko has a policy of minimizing the needs of inmates for prescribed medication.  McMillan was causally denied his prescribed medication which treats his serious diseases, thus putting McMillan unnecessarily at dangerous risk.  McMillan did in fact suffer consequences with the denial of his necessary prescribed medications for diabetes by Jail Nurses DO1 and DO2 with the occurrence of visual hallucinations during and after release from jail.

65.    Thus Sheriff Thomas M. Bosenko's policy was a substantial factor in causing McMillan's harm. McMillan seeks damages for the harm inflicted on him which includes of negligent infliction of physical injury, mental suffering, and emotional distress.

66.    Plaintiff seeks the enhanced remedies of attorney fees and costs provided for in the California Elder Abuse and Dependent Adult Civil Protection Act against Sheriff Thomas M. Bosenko.

21

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1.  For general damages in an amount according to proof, within the jurisdictional limits of this court, and;

2.  For special damages in an amount according to proof, within the jurisdictional limits of this court, and;

3.  For punitive damages as against Defendants Officer1, City of Anderson, Fire Chief Lowe, Anderson Fire Protection District,  Sheriff Thomas M. Bosenko, and County of Shasta and DOE1 and DOE2, and;

4.   For costs of suit incurred herein, including attorney's fees pursuant to 42 U.S.C. section 1988, and;

5.   For the enhanced remedies of attorney fees and costs provided for in the California Elder Abuse and Dependent Adult Civil Protection Act against Officerl, Fire Chief Lowe and Sheriff Thomas M. Bosenko, and;

6.  Plaintiff requests a Jury Trial pursuant to Local Rule 201 and the Federal Rules of Civil Procedure;

7.  For such other and further damages as provided by law, or such further relief as the court may deem just and proper.

Dated:  March 13, 2020                                     /s/James I. McMillan
                                                          James I. McMillan, Esq.
                                                          In propria persona


Certification and Closing Under Federal Rule of Civil Procedure 11,  by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for

22

extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: March 13, 2020          /s/James I. McMillan

**COMPLAINT FOR DAMAGES - 42 U.S.C. §1983**