1  James I. McMillan, CBN 68584
   4955 Via Lapiz
2  San Diego, CA 92122
   Office: 858-646-0069
3  Direct: 858-412-0058
   Fax: 206-600-4582
4  Email: jimcmillan@netscape.net

5  JAMES I. MCMILLAN, **in propria persona**

6

7

8              **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10
                                    Case No.: 2:20-cv-00564-JAM-EFB
11  James I. McMillan,
                                    **FIRST AMENDED**
12         Plaintiff,              **COMPLAINT FOR DAMAGES.**

13         vs.                      42 U.S.C.  1983

14  County of Shasta, a public entity; City of       State Claims re: Elder Abuse
    Anderson, a public entity; Anderson Fire      Welfare and  Institutions Code § 15657
15  Protection District, a public entity; Fire Chief
    Steve Lowe in his official and individual           **JURY TRIAL DEMANDED**
16  capacity; Anderson Police Officer Kameron Lee
    in his official and individual capacity; Shasta   Judge:  Hon. John A. Mendez.
17  County Sheriff-Coroner Thomas M. Bosenko      Courtroom:   6, 14th Floor
    ret., in his individual and official capacities;
18  County Jail Captain Dave Kent, in his
    individual and official capacity;  California
19  Forensic Medical Group, Inc., a California
    Corporation; Jail Nurse DOE1, Jail Nurse
20  DOE2 and DOES 3-20; individually, jointly,
    and severally,
21
           Defendants.
22

23

24               **PARTIES TO THIS COMPLAINT**

25     1.   The Plaintiff

26              Name              James I. McMillan
                Street Address    6059 Dirac Street
27              City and County   San Diego, San Diego County
                State and Zip Code  California  92122
28              Telephone Number  (858) 646-0069

2. The Defendants

a.  Name                    Steve Lowe
    Street Address          1925 Howard Street
    City and County         Anderson, Shasta
    State and Zip Code      California, 96007
    Telephone Number        (530) 378-6699

b.  Name                    Anderson Fire Protection District
    Street Address          1925 Howard Street 96007
    City and County         Anderson, Shasta
    State and Zip Code      California, 96007
    Telephone Number        (530) 378-6699

c.  Name                    Officer Kameron Lee
    Street Address          2220 North Street
    City and County         Anderson, Shasta
    State and Zip Code      California, 96007
    Telephone Number        (530) 378-6600

d.  Name                    City of Anderson
    Street Address          1887 Howard Street
    City and County         Anderson, Shasta
    State and Zip Code      California, 96007
    Telephone Number        (530) 378-6626

e.  Name                    Jail Nurse DOE1
    Street Address          1655 West St. County Jail
    City and County         Redding, Shasta
    State and Zip Code      California, 96001
    Telephone Number        (530) 245-6100

f.  Name                    Jail Nurse DOE2
    Street Address          1655 West St. County Jail
    City and County         Redding, Shasta
    State and Zip Code      California, 96001
    Telephone Number        (530) 245-6100

g.  Name                    Shasta County-Coroner Sheriff Thomas M Bosenk, ret.
    Street Address          unknown
    City and County         unknown
    State and Zip Code      unknown
    Telephone Number        unknown

h.  Name                    County of Shasta
    Street Address          1450 Court Street, Suite 308B
    City and County         Redding, Shasta
    State and Zip Code      California, 96001
    Telephone Number        (530) 225-5550

/ / /

/ / /

-2-

i.   Name  California Forensic Medical Group, Inc., California Corporation
     Street Address          2511 Garden Road Suite A160
     City and County         Monterey, Monterey County
     State and Zip Code      California, 93940
     Telephone Number        (831)-649-8994

j.   Name                    Dave Kent
     Street Address          1655 West St. County Jail
     City and County         Redding, Shasta
     State and Zip Code      California, 96001
     Telephone Number        (530) 245-6100

## BASIS FOR JURISDICTION AND VENUE

3.  This is a civil rights action brought and primarily arising from Defendants' unreasonable, unlawful actions, and deliberate indifference to the age and serious medical needs of pre trial detainee, James I. McMillan resulting in unwarranted infliction of mental distress, physical pain, injury, and serious consequences.  This action is brought pursuant to 42 U.S.C. §1983, the US Constitution and amendments thereto.  This Court has original Federal Question Jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, over Plaintiff's claims for Violation of Civil Rights 42 U.S.C. §1983.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.

## INTRADISTRICT ASSIGNMENT

4.  All the acts and omissions alleged in this SECOND AMENDED COMPLAINT FOR DAMAGES (hereinafter "Complaint") occurred in the State of California, County of Shasta. Pursuant to Eastern District Civil Local Rule 120(d) this action is properly brought in the Sacramento Division of the United States District Court for the Eastern District of California.

## PRELIMINARY FACTS

5.  The plaintiff James I. McMillan (McMillan) born in 1941, was 77 years old in March 2019, is approximately 6 feet and 3 inches tall, and weighed approximately 245 lbs at the time of his arrest. In addition he was suffering from various documented medical conditions, including diabetes, high blood pressure, and heart arrhythmia which all require regularly scheduled prescribed medication. McMillan has lived in San Diego, California since 1963.

///

1

## Anderson Firemen Arrive

2    6.    At about 10 p.m. March 7, 2019, McMillan saw a fire truck in the street in the front of

3    1892 Diamond Street, Anderson, California. McMillan went out and saw a group of 6 or so firemen

4    standing in the driveway. He asked what was going on. One of the firemen said a fire had been

5    reported at the address. McMillan told the firemen there was no fire.  One of the group demanded to

6    look.  McMillan accompanied the group to the backyard, unlocking a gate. There was no fire.  There

7    were three small metal 8 oz coffee cans near each other sitting on the bottom of a nearly empty large

8    concrete swimming pool.

9    7.    The firemen returned to the driveway in front of the house and McMillan locked the

10   side gate and went back inside the home.  After maybe 10 minutes passed, one of the firemen came

11   and banged on the front door.  McMillan answered the door and was told to come out into the

12   driveway, that the firemen were not through with him.  McMillan, escorted by the fireman who

13   fetched him, went to the driveway where the group of firemen were standing. Their demeanor

14   seemed hostile and aggressive.

15   8.    At that point McMillan noticed that Anderson Fire Chief Steve Lowe (Fire Chief Lowe)

16   was now present, wearing a badge and official accouterments.  Apparently the Firemen had been

17   chatting with Fire Chief Lowe for a few minutes before McMillan was informed that the firemen

18   were not finished talking with him. Three or four City of Anderson police officers also arrived

19   about that time.  Fire Chief Lowe asked McMillan no questions concerning any activity McMillan

20   might have been involved in, but then, in a hostile and aggressive tone demanded that McMillan

21   provide his name, age, and present his driver's license.  McMillan provided his name and address in

22   San Diego but refused to provide any further information, including his age or driver's license.

23   9.    McMillan calmly explained that he had not been driving and that a driver's license

24   was only required to be produced on demand by a peace officer in connection with the operation of

25   a motor vehicle.  Fire Chief Lowe became visibly upset.

26   10.   Anderson Police Officer Kameron Lee pulled out his cell phone, verified McMillan's

27   address and obtained his age, passing along the information to Fire Chief Lowe.

28

1    11.   Without any further discussion Fire Chief Lowe prepared a citation citing two code

2   violations.  Fire Chief Lowe then handed the citation to McMillan to sign.  McMillan refused to

3   sign without hearing any explanation of the charges.  Fire Chief Lowe became even more upset.

4   Acting under color of law, Fire Chief Lowe falsely charged McMillan without probable cause with

5   violations of 42400.2(c)HS  and 148(A)(1) PC.[1]

6                              **McMillan is Further Abused at Shasta County Jail.**

7    12.   Immediately after McMillan refused to sign the citation prepared by Fire Chief Lowe,

8   Officer Kameron Lee stepped up, and before any further discussion with anyone occurred, Officer

9   Kameron Lee handcuffed McMillan placing him under arrest.  None of the defendants had a search

10   warrant.  Without checking other pockets Officer Kameron Lee went directly to McMillan's left hip

11   pocket where a bulge indicated a wallet, seized McMillan's wallet, pulled out his driver's license

12   and examined it.  Officer Kameron Lee then replaced the license in the wallet and stuffed the wallet

13   back into McMillan's jacket pocket without checking more pockets for anything else or

14   commenting.

15    13.   Without further discussion with anyone, Officer Kameron Lee then took McMillan to

16   his police cruiser, opened a door to the back seat and ordered McMillan to get in.  McMillan

17   objected that the handcuffs were too tight. Officer Kameron Lee said they were not, that he had

18   checked them. The cuffs were sufficiently tight that McMillan was unable to bend his arms at the

19   elbow to maneuver into the back seat from a standing position.  McMillan was too tall to just sit

20

21          [1]

22   **California Code, Health and Safety Code - HSC § 42400.2( c )**
    "(c) Any person who owns or operates any source of air contaminants in violation of Section 41700 that causes actual
23   injury, as defined in subdivision (d), to the health or safety of a considerable number of persons or the public is guilty of
    a misdemeanor and is subject to a fine of not more than fifteen thousand dollars ($15,000) or imprisonment in the
24   county jail for not more than nine months, or both."

25   **California Penal Code § 148.(a) (1)**
     "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical
26   technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge
    or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be
27   punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one
    year, or by both that fine and imprisonment."

28

1  down with his arms behind his back.  The driver's seat was back too far, leaving no room for

2  McMillan's knees to fit between the back of the back seat and the back of the front seat, about 15

3  inches. Officer Kameron Lee offered McMillan no assistance getting into the vehicle whatsoever,

4  and again just ordered McMillan to get in the car.

5        14.   Officer Kameron Lee then said he was going to shut the door which would hit

6  McMillan.  At that point McMillan just dropped into the back seat lengthwise twisting to his right

7  side without any way to cushion his fall.  The fall caused intense pain in McMillan's shoulders as

8  his 245 pound body hit the hard plastic back seat, twisting his arms – causing him great physical

9  pain and injury.  Officer Kameron Lee then told McMillan to get his feet inside that he was going to

10  shut the door.  McMillan wiggled into the car more.  When Officer Kameron Lee shut the door it

11  shoved McMillan's feet into the car causing pain in McMillan's right knee due to a prior recent

12  injury.

13        15.   Due to his physical size and the fact that his hands were cuffed behind his back,

14  McMillan was unable to sit upright in the vehicle. Instead, he was left laying painfully on his right

15  side scrunched up on the hard plastic bench that comprised the back seat of Officer Kameron Lee's

16  police cruiser.

17        16.   Officer Kameron Lee left McMillan, lying on his side handcuffed and suffering intense

18  physical pain in the car for in excess of ten minutes, while Officer Kameron Lee chitchatted with

19  the other police officers and firemen, including Fire Chief Lowe. Officer Kameron Lee finally

20  returned to the vehicle, opened the back door and with a tormenting tone asked McMillan "Are you

21  ready to sign?" McMillan responded "No." whereupon Officer Kameron Lee closed the back door,

22  got in the car and headed to the Shasta County Jail about 10 miles away in Redding, California.

23        17. McMillan suffered great pain in his wrists and shoulder joints while twisted on his right

24  side, with his feet jammed against the car door closed against them by Officer Kameron Lee for

25  approximately 20 minutes before being removed from the police cruiser.

26        18.  To date, McMillan continues to suffer pain in his left shoulder which is directly

27  attributable to Officer Kameron Lee's intentionally and unnecessarily rough treatment which Officer

28  Kameron Lee inflicted merely because McMillan refused to sign Fire Chief Lowe's citation.

**McMillan is Further Abused at Shasta County Jail.**

19.  Upon arrival at the Shasta County Jail in Redding, California (Jail) plaintiff was handed over to the Jail's intake person on duty who took possession of McMillan's personal property including his shoes and the contents of his pockets, including a small container of acarbose tablets, a diabetes medication prescribed to McMillan by his physician.

20.    The jail intake person asked about any medical conditions McMillan had. McMillan said that he was diagnosed by a medical doctor as suffering from diabetes, high blood pressure, heart arrhythmia, and at high risk of stroke. At the time, McMillan was taking medications for all these conditions, including a prescribed blood thinner to reduce the risk of stroke. A nurse was called to interview McMillan.

21.    When the unknown yet to be identified nurse (Jail Nurse DOE1) showed up she examined McMillan's container of acarbose and ask him what it was for. He told her it was a diabetes drug. She said it was not in an original bottle and could not be taken into the jail. She threw it in the trash. She then asked McMillan what other drugs he was taking for his medical conditions. He told her as best he remembered - there were 8 or more with odd names: Acarbose to block the digestion of carbohydrate to glucose, NPH insulin a long term acting insulin to help keep blood sugar down, Nadolol for heart arrhythmia, Metformin to help keep blood sugar down, Telmisartan for high blood pressure, Verapamil for high blood pressure, plus a blood thinner to prevent clotting. There were a few other prescribed medications he was taking at the time, but told Jail Nurse DOE1 that he was unable to recall their names. At no point in time did Jail Nurse DOE1 or anyone else during McMillan's confinement either make McMillan's required prescribed medications available to him or otherwise provide him with any reasonably available substitutes.

22.    Jail Nurse DOE1 then used a small device to punch a hole in one of McMillan's fingers to get a drop of blood to test his sugar level. She showed him the results on her glucose meter - 145mg/ml. McMillan told her it was high and would get higher if he were not given his diabetes medication. She ignored McMillan's pleas, and instead of taking steps to ensure he timely received his prescribed medications, she retorted "You're fine."

/ / /

23.   McMillan explained to Jail Nurse DOE1 that he generally maintains his blood glucose level below 120 mg/dl, taking 15 units of NPH insulin in the evening just before bedtime and 20 units around 2 pm in the afternoon. He supplements this regimen with Acarbose and Metformin as prescribed by his treating physician. He complained to the nurse that he needed some insulin and that his blood glucose would get higher and potentially put him at great risk without insulin and/or his prescribed medications.  Making no comment, the nurse went over to chat with Officer Kameron Lee and the DOE jail guy.  At no time did Jail Nurse DOE1 or any other person at the jail facility ever take any steps whatsoever to either provide McMillan with his necessary prescribed medications or otherwise ensure that he received them during the entirety of the time he was incarcerated in spite of being fully informed of McMillan's medical needs. Jail Nurse DOE1was very dismissive of McMillan's various medical conditions.

24.   Jail Nurse DOE1 told McMillan diabetic meals were available but, for whatever reason jail deputies refrained from giving, or even offering him one. The food McMillan was given for breakfast, lunch and dinner on Friday, March 8th was heavily carbohydrate laden – poison to a diabetic.  McMillan gave the deserts to other prisoners in the holding room, and just did not eat much of the other high carbohydrate food offered.

25.   After being searched by the intake person and having his property taken McMillan was taken by a deputy to a holding room. McMillan was given a cloth which the jailers called a "blanket," as they ordered him into the holding room and locked the door. The so called "blanket" was a thin cloth about 3/16 of an inch thick. McMillan was in the room from about 11 p.m. Thursday though about 2 a.m. Saturday – a period of no less than 27 hours. The lights were never turned off, making it exceedingly difficult to sleep.

26.   The holding room was not square but was trapezoidal in shape of about 90 sq. ft. usable area of bare, cold concrete for sleeping including the bare, cold concrete benches along the two longer walls. When McMillan was placed in the holding room there were about 10 other prisoners already in the room with the addition of McMillan for a total of 11. Other prisoners who had been in the room for more than a day told McMillan that there had been more than 20 in the holding room at one time.  Another prisoner in the room said county law enforcement had been

-8-

1  doing a drug sweep for a couple days, cracking down on methamphetamine users.  There were no

2  bunks in the holding room.  The seating benches along two walls were cold, bare concrete about 16

3  inches wide.  The holding room floor was cold, bare concrete as well, and was filthy.

4     27.     McMillan was in the holding room for more than 24 hours, thus forced to sleep with

5  only a small, thin 3/16" blanket for padding, warmth, and to block out the lights which were never

6  turned off, only dimmed a bit in the evening.  At McMillan's size, 6'3" and 245 lbs, the blanket was

7  too small to serve each of those purposes at the same time. A night of fitful sleeping on concrete

8  was not just uncomfortable, but resulted in sore spots and continuous back pain.  McMillan asked a

9  Deputy for a second blanket, but the Deputy refused his request with the retort "Only one blanket."

10    28. After McMillan entered the room he noticed trash on the concrete floor in the room,

11  empty lunch bags, empty milk cartons and food wrappers plus various scraps. The toilet paper roll

12  was on the floor soaked.  It had been wet for some time and was never replaced during the 27 hours

13  or so while McMillan was in the room. McMillan picked up the larger pieces of trash at some point

14  and set those by the door for removal along with used meal bowls.  After a few hours a deputy

15  eventually collected the empty bowls along with the trash and swept the floor around the door and

16  thanked McMillan for cleaning up a bit. When McMillan complained about the remaining trash, the

17  deputy said the holding room would be thoroughly cleaned later. That did not happen in the 27

18  hours or so McMillan was in the holding room.

19    29. There were a couple short fights with punches landed between prisoners that

20  wanted to sleep, and loud, shouting, seemingly crazed prisoners. No effort was made by the

21  jailers to separate the prisoners with obvious symptoms of mental illness creating a predictably

22  dangerous condition in the holding room.

23    30.  Several hours after being placed in the holding room, a jail nurse (Jail Nurse DOE2)

24  different from the jail nurse (Jail Nurse DOE1) who tested McMillan's blood sugar on his arrival at

25  the jail came by the holding room to check on McMillan's blood sugar.  Predictably, it had risen to

26  175mg/dl from145mg/dl when McMillan was first brought into the jail a few hours earlier. As he

27  had done with Jail Nurse DOE1, McMillan told Jail Nurse DOE2 that he needed insulin or the level

28  would continue to go up. She said that she was aware of McMillan's medical needs.  But, neither

-9-

1  Jail Nurse DOE1 nor Jail Nurse DOE2 nor anyone else ever provided McMillan with any of his

2  essential prescribed medications, including his needed insulin.  McMillan is informed and believes

3  that sometime Friday, March 8, 2019, McMillan's cousin, Jerry Hopson attempted to deliver

4  McMillan's prescribed medications in original pharmacy prescription labeled bottles to the jail, but

5  the delivery was refused by the Deputy in charge.

6                          **McMillan Sustains Injuries at The Shasta County Jail**

7           31.    McMillan was subjected to more than 24 hours confinement in the Shasta County Jail.

8  During this time he endured lack of sleep, the knowing and intentional withholding of essential

9  prescription medications, and terrible living conditions causing body pain in the holding room as

10  described above.  He was never offered a bunk or food fit for a diabetic.   Both prescribed

11  medications NPH insulin, and Metformin McMillan regularly uses to control his blood glucose

12  level to less than 120mg/deciliter were intentionally withheld along with his blood pressure, heart

13  arrhythmia and anti blood clotting medications.  Despite being told by Jail Nurse DOE1 that

14  diabetic meals were available, McMillan was not provided food fit for a diabetic, but was provided

15  high carbohydrate meals instead while incarcerated.  The Deputies bringing the food trays, never

16  asked or offered any specially prepared diabetic meal, offering just the same as everyone else in the

17  holding room received.

18           32.   During the course of being released from the Shasta County McMillan began

19  experiencing visual hallucinations as a result of having been deprived of his necessary prescribed

20  diabetes medications. White surfaces appeared to be covered in mats of waving pine needle like

21  images. He did not mention this to the Deputies out of fear he would be held for medical

22  examination where he would likely only continue to be deprived of his medication and access to

23  medical care. The hallucinations progressed to static images of something like Egyptian

24  hieroglyphics on white surfaces by the time he got home about 3 a.m. on Saturday, March 9, 2019.

25                          **McMillan is released from the Shasta County Jail**

26           33.    During the release process Deputy Sheriff McQuillan prepared the "Agreement on

27  Release." The Deputy used a regular ball point ink pen to fill out the top portion of the "Agreement

28  on Release," plus the "A" portion but gave McMillan a small pen to sign with that wrote in very

light blue ink and was incapable of being pressed on to the paper because it was flexible. Nothing either the deputy or McMillan wrote on the form after the A portion was readable on McMillan's copy of the form "Agreement on Release."

34.    On the "Agreement on Release" form the booking charges were written as "42400.2(c)HS  and 148(A)(1) PC" without any explanation.  The booking charges appeared to have been based on a full page, single spaced fax that seemed to have been prepared by Anderson Fire Protection District personnel which the Deputy paused to read and study for about 15 minutes before preparing the Agreement on Release. After the Deputy finished reading the document, for some unknown reason, he shredded it.  McMillan first learned of the specific code violations he had been cited for upon release from Shasta County Jail where the violations were identified on the "Agreement on Release" form, but still no explanation as to the contents of the cited codes. McMillan was arrested and incarcerated in the Shasta County Jail for about 27 hours, from about 11p.m. Thursday, March 7, 2019 until about 2 a.m. Saturday, March 9, 2019.

35.    The Agreement on Release set McMillan's arraignment on May 10, 2019, at 8:30 a.m. and directed that McMillan appear at the court located at 1500 Court Street in Redding, California, and further directed that the court calendar be checked for the court room where he should appear. McMillan retained counsel and both appeared on May 10, 2019, and neither McMillan nor counsel found any mention of McMillan's name in the lists of those to be arraigned in either dept 9 or 10 at 10:00 am on May 10, 2019.  Counsel appeared along with McMillan in Dept 10, making a record of McMillan's appearance. McMillan was present and stood when counsel brought to the court's attention that McMillan had appeared pursuant to the Agreement on Release.

36.  Subsequently, on January 29, 2020 the Shasta County District attorney "superceded" the citation issued alleging violations of  HSC § 42400.2( c ) and PC § 148.(a) (1) by Anderson Fire Chief Steve Lowe and charged McMillan with the open burning of petroleum products, HSC § 41800/42400.

**PARTIES AND PROCEDURE**

37. City of Anderson ("CITY") is a public entity, duly organized and existing under the laws of the state of California.  Under its authority, the CITY owns, operates, manages, directs and

1  controls the Anderson Police Department, which employs and/or is responsible for Defendant

2  Officer Kameron Lee.  Pursuant to Government Code § 815.2, the CITY is vicariously liable for the

3  state law torts of its employees and agents, including Defendant Officer Kameron Lee.

4      38.  The Anderson Fire Protection District ("AFPD") is a public entity duly organized and

5  existing under the laws of the state of California acting as the Anderson Fire Department. Under

6  state authority, the AFPD through its board of directors owns, operates, manages, directs and

7  controls the Anderson Fire Department, which employs and/or is responsible for Defendant Fire

8  Chief Steve Lowe.  Pursuant to Government Code § 815.2, the AFPD is vicariously liable for the

9  state law torts of its employees and agents, including Defendant Fire Chief Steve Lowe.

10      39.  Defendant County of Shasta ("COUNTY") is a public entity, duly organized and

11  existing under the laws of the State of California.  Under its authority, the County of Shasta operates

12  the Shasta County Sheriff's Office.

13      40. Defendant California Forensic Medical Group, Inc. ("CFMG"), was at all times herein

14  mentioned, a California Corporation licensed to do business in California, with its corporate head

15  quarters located in Monterey, California.  Defendant CFMG provided medical, mental health, and

16  nursing care to pretrial and post-conviction detainees and prisoners in Shasta County Jails.

17      41. Defendant Thomas M. Bosenko at all times mentioned herein, was employed by the

18  County of Shasta as Sheriff-Coroner for the county, and he was acting within the course and scope

19  of that employment.  In that capacity, Thomas M. Bosenko was a policy making official for the

20  County of Shasta.  Further, Thomas M. Bosenko was ultimately responsible for provision of

21  medical care to inmates and jail conditions, and all County of Shasta and "CFMG" policies,

22  procedures, and training related thereto.  He is being sued in his individual capacity.

23      42.  Defendant Captain Dave Kent at all times mentioned herein, was employed by

24  Defendant County of Shasta as Captain of the Custody Division, including the jail, for the County

25  of Shasta, and he was acting within the course and scope of that employment.  Plaintiff alleges that

26  in that capacity Defendant Dave Kent was responsible for the general management and control of

27  the Custody Division, with primary authority and responsibility for the operations, staff

28

-12-

1    assignments, program development, personnel supervision and training, maintenance and auxiliary

2    inmate services at the jail, subordinate only to the Sheriff and/or the Undersheriff.

3         43.   Plaintiff alleges on information and belief the Jail nurses DO1 and DO2 were

4    employees of CFMG who were inadequately trained and thus responsible for the nurses' failure to

5    recognize James I McMillan's medical needs and assure adequate care for James I. McMillan while

6    held in the jail through denial of insulin ultimately resulting in his increasing blood sugar leading to

7    the visual hallucinations McMillan suffered during the course of being released from Shasta County

8    Jail and afterward.

9                      **STATEMENT OF CLAIMS FOR RELIEF**

10                             **FIRST CLAIM FOR RELIEF**
     **Violation of Constitutional Rights - 42 U.S.C.  1983**
11                    **Fourth Amendment – Unreasonable Search**
     **As to Defendant Officer Kameron Lee, City of Anderson, Fire Chief Lowe, and**
12              **Anderson Fire Protection District**, **and DOES 3 through 20.**

13         44.    Plaintiff hereby incorporates by reference specifically paragraph 12 plus all other

14   paragraphs of this complaint as if set forth in full.

15         45.    At all relevant times alleged herein, Defendant Officer Kameron Lee was acting under

16   color of law within the course and scope of his duties as an Anderson Police officer employed by

17   the City of Anderson's Police Department.  Officer Kameron Lee violated Plaintiff's constitutional

18   rights when he removed McMillan's wallet and examined it without a warrant as described in

19   paragraph 12 above.  Officer Kameron Lee committed said acts without justification or authority,

20   and without probable cause, exigency, or court order.  These Defendants, and each of them,

21   including but not limited to Fire Chief Lowe and/or Kameron Lee were present and knowingly and

22   intentionally acted either directly or as an "integral participant" [2] in the events described herein.

23   Moreover, these Defendants, and each of them, were at all times relevant acting under color of law

24   within the course and scope of their duties as employed by their respective agency employers. As a

25   direct and proximate result of the actions of these Defendants, and each of them, Plaintiff has

26

27   ――――――――――――――――

28        [2] See "integral participant" under **Boyd v. Benton County** 374 F.3d 773 (9th Cir. 2004).

1   suffered, and will continue to suffer, general and special damages according to proof at trial.  Due to

2   the malicious, wanton, callous, reckless, and wrongful nature of the Defendants' misconduct as

3   herein alleged and described, Plaintiff is entitled to recover damages from Officer Kameron Lee,

4   City of Anderson, Fire Chief Lowe, and Anderson Fire Protection District, and shall seek punitive

5   damages as according to proof at trial.

6                               **SECOND CLAIM FOR RELIEF**

7   **Violation of Constitutional Rights - 42 U.S.C.  1983**
    **Fourteenth and Eighth Amendments – Cruel and**
8   **Unusual Punishment, Deliberate Indifference.**
    **Torture Inflicted by Officer Kameron Lee on McMillan in Police Cruiser**
9   **As to Officer Kameron Lee, City of Anderson, Fire Chief Lowe,**
    **Anderson Fire Prevention District, and DOES 3 through 20.**

10

11      46.    Plaintiff hereby incorporates by reference all other paragraphs of this complaint as if

12   set forth in full.

13      47.    McMillan is informed and believes and on that basis alleges that Officer Kameron Lee

14   was at all relevant times mentioned herein employed as a peace officer by the City of Anderson,

15   Anderson, California in the Anderson Police Department and was acting in that capacity under color

16   of law.  Fire Chief Lowe was present as an integral participant colluding with Officer Kameron Lee,

17   acting under of color of law, and was at all relevant times mentioned herein employed by the

18   Anderson Fire Prevention District.

19      48.    Plaintiff hereby incorporates by reference paragraph 12 through 18 wherein the details

20   of Defendant Officer Kameron Lee's wrongful and outrageous intentional infliction of pain on and

21   injury to McMillan for the purpose of convincing McMillan to sign the citation is described and

22   injury there from inflicted on McMillan.  At the time of Officer Kameron Lee's conduct, the law

23   was so clearly established that any law enforcement officer in Officer Kameron Lee's circumstances

24   would have known his conduct violated McMillan's rights under the United States Constitution.

25   Due to the malicious, wanton, callous, reckless, and wrongful nature of the Defendant Officer

26   Kameron Lee's misconduct as herein alleged and described, Plaintiff is entitled to recover damages

27   against Officer Kameron Lee, City of Anderson, Fire Chief Lowe, and Anderson Fire Prevention

28   District, and shall seek, punitive damages.

**THIRD CLAIM FOR RELIEF**

**Violation of Constitutional Rights - 42 U.S.C.  1983**
**Fourteenth and Eighth Amendments – Cruel and**
**Unusual Punishment, Deliberate Indifference.**

**Torture Inflicted on McMillan by Fire Chief Lowe in Police Cruiser**
**As to Fire Chief Steve Lowe and Anderson Fire Prevention District,**
**and DOES 3 through 20.**

49.   Plaintiff hereby incorporates by reference all other paragraphs of this complaint as if set forth in full.

50.   McMillan is informed and believes and on that basis alleges that Fire Chief Lowe was at all relevant times mentioned herein employed as a Fire Chief by the Anderson Fire Protection District in Anderson acting under color of law.

51.  Plaintiff hereby incorporates by reference paragraph 12 through 17 wherein the details of Defendant Fire Chief Lowe's conspiracy, approval and participation with Officer Kameron Lee in the confinement of McMillan are set out. At the time of Fire Chief Lowe's conduct, the law was so clearly established that any law enforcement officer in his circumstances as an integral participant would have known his conduct violated McMillan's rights under the United States Constitution.

52.  Due to the malicious, wanton, callous, reckless, and wrongful nature of the Defendant Fire Chief Lowe's misconduct as herein alleged and described, Plaintiff is entitled to recover damages, and shall seek, punitive damages.

**FOURTH CLAIM FOR RELIEF**

**Violation of Constitutional Rights - 42 U.S.C.  1983**
**Fourteenth and Eighth Amendments – Deliberate Indifference.**

**Denial of Prescription Medications by Jail Nurses DOE1 and DOE2.**
**AS to Jail Nurses DOE1 and DOE2, CALIFORNIA FORENSIC MEDICAL GROUP, INC.,**
**Jail Captain DAVE KENT,  Shasta County Sheriff-Coroner**
**TOMAS M. BOSENKO, COUNTY OF SHASTA, and DOES 3 through 20.**

53.   McMillan is informed and believes that at all relevant times mentioned herein and upon that basis alleges that Jail Nurses DOE1 and DOE2 were employed at the Shasta County Jail by contract with CFMG between with the Sheriff's Department or the County of Shasta with the duty of administering to the medical needs of the prisoners incarcerated in the Shasta County Jail, and were

1    subject to the direction and control of Shasta County Sheriff-Coroner Thomas M. Bosenko who was

2    employed by the County of Shasta to operate and oversee the operation of the Shasta County Jail.

3    Within the Sheriff's administration of the jail, Captain Dave Kurt was directly in charge of jail

4    operations.  Plaintiff alleges on information and belief that both breached their administrative,

5    constitutional duties by way of deliberate indifference to assure the medical needs of the prisoners

6    were met.  The neglect of its obligations to the jail prisoners by CFMG resulted in inadequately

7    trained and dismissive jail nurses DO1 and DO2 failing to provide McMillan his prescribed

8    medications all of which led to the serious hallucinations experienced by McMillan caused by out of

9    control high blood sugar, blood like syrup..

10        54.   Plaintiff hereby incorporates by reference paragraphs 20 through 24 and 30-32 wherein

11    the details of Jail Nurses DO1 and DO2 respective breaches of their duty to administer to the medical

12    needs of McMillan are set forth.   Both nurses declined to provide prescribed medicinal drugs for

13    treatment of serious, life threatening diseases suffered by McMillan.  McMillan suffered injury from

14    lack of his prescribed diabetic medications when afflicted with visual hallucinations.  Plaintiff seeks

15    damages for the harm inflicted and the willful violation of his right to preventive treatment of his

16    serious medical conditions.

17        55.   Due to the malicious, wanton, callous, reckless, and wrongful nature of the Jail Nurses'

18    misconduct as herein alleged and described, Plaintiff is entitled to recover damages, and shall seek,

19    punitive damages against each.  Further, due to deliberate indifference to the failings of the Jail

20    Nurses DO1 and DO2, Plaintiff seeks damages against Thomas M. Bosenco, Dave Kent, CFMG, and

21    the County of Shasta..

22
                              **FIFTH CLAIM FOR RELIEF**
23
                   **Fourteenth and Eighth Amendment – Cruel and**
24                      **Unusual Punishment, Deliberate Indifference.**
                   **As to Shasta County Sheriff THOMAS M. BOSENKO,**
25                   **Jail Captain DAVE KENT, and DOES 3 through 20.**

26        56.   Plaintiff hereby incorporates by reference paragraph 25 through 29.

27        57.   McMillan alleges that prisoners including Plaintiff, in the Shasta County Jail holding

28    rooms are abused by being forced to sleep on cold concrete (benches or floor) without significant

1    cushion for how ever long they are held in the holding room.

2         58.    McMillan alleges he was held more than 24 hours in a holding room.

3         59.    Due to the malicious, wanton, callous, reckless, and wrongful nature of Shasta County

4    Sheriff-Coroner Thomas M. Bosenko's and that of Jail Captain Dave Kent's indifference to the

5    abusive holding room conditions as mistreatment of the prisoners subject to the conditions including

6    that of McMillan as herein alleged and described, Plaintiff is entitled to recover damages, and shall

7    seek, punitive damages.

8                                    **SIXTH CLAIM FOR RELIEF**

9                          **42 U.S.C. Sec. 1983 -- Monell-Related Claims**
                              **As to Anderson Fire Prevention District,**
10                   **City of Anderson, and Shasta County, and DOES 3 through 20.**

11        60.    Plaintiff hereby incorporates by reference this paragraph in all other paragraphs of this

12   Complaint as if set forth in full.  Defendants Anderson Fire Prevention District, the City of Anderson

13   and the County of Shasta (collectively, "Entity Defendants"), are each a "person" within the meaning

14   of 42 U.S.C. § 1983 and subject to Monell liability under Monell v. Dept. of Social Services (1978)

15   436 U.S. 658.   Defendants, and each of them, acted under color of state law when committing the

16   acts alleged herein, in violation of Plaintiff's rights.

17        61.    Each of the Entity Defendants had a duty to Plaintiff to establish, implement, and

18   follow policies which confirm and provide the protections guaranteed Plaintiff under the United

19   States Constitution. Said Entity Defendants also had the duty to use reasonable care to select, assign,

20   supervise, train, and review the activities of all their respective agents, so as to protect Plaintiff's

21   constitution rights and to avoid causing the injuries and damages alleged herein.  Based on the duties

22   charged to each of the respective Entity Defendants, they knew or should have known of the obvious

23   need to establish customs, policies and practices to protect Plaintiff from suffering the injuries and

24   damages herein alleged. Entity Defendants established policies that served as the moving force

25   behind the violations herein alleged, or alternatively, were deliberately indifferent to the need to

26   establish proper policies and procedures to avoid the same. Entity Defendants, and each of them,

27   established the following policies, procedures, customs, or practices which were the moving force

28   behind the violations alleged:

1      a. The policy, custom, or practice of placing persons who refuse to produce

2  identification under arrest, with the intention of searching such persons' bodies, papers, and effects

3  for such identification, without a warrant, and in the absence of exigent circumstances, or knowingly

4  aiding and abetting the same;

5      b. The policy, custom, or practice of inflicting pain and mental anguish in an effort to

6  coerce persons to sign citations issued by the Anderson Fire Prevention District, or knowingly aiding

7  and abetting the same;

8      c. The policy, custom, or practice of failing to diligently obtain medical information

9  regarding persons incarcerated at the Shasta County Jail and/or refusing to administer prescribed

10  medication to such inmates; and

11      d. The policy, custom, or practice of abusing inmates of the Shasta County Jail by

12  forcing them to sleep on cold concrete (benches or floor) without significant cushion for however

13  long they are held in the holding room, in unsanitary and crowded conditions. (This list is not

14  exhaustive due to the pending nature of disclosure and discovery. Plaintiff may seek leave to amend

15  this pleading as more information becomes available.)

16      62.    Entity Defendants, and each of them, breached their respective duties and obligations

17  to Plaintiff by failing to establish, implement, and follow proper Constitutional policies, customs,

18  and procedures and by failing to properly select, supervise, train, and control their respective agents

19  and employees regarding the same. Each of the Entity Defendants knew, or should have known, that

20  by breaching the above-mentioned duties and obligations, the failure to implement proper policies

21  and procedures would cause Plaintiff to be injured and damaged, and were deliberately indifferent to

22  the need to do so.

23      63.    These actions and/or inactions were the moving force behind, and the direct and

24  proximate cause of Plaintiff's injuries as alleged herein. As a result, Plaintiff has suffered general

25  and special damages, to an extent and in an amount to be proven at trial.

26  / / /

27  / / /

28

1

2 **<u>STATE CLAIMS FOR RELIEF</u>**

3 **CLAIMS FOR DAMAGES WERE SUBMITTED AS REQUIRED**
**BY STATE CODE SECTIONS §§ 910 *et seq.***

4

5     64.   Paragraph 5 through 27 above are incorporated by reference as if set forth in full here.

6 On information and belief McMillan alleges that at all times mentioned herein:

7         a.  Shasta County Jail in Redding, California was and remains a department of the

8 County of Shasta, and

9         b.  The Shasta County-Coroner Sheriff manages the Shasta County Jail by agreement

10 with the County of Shasta, and

11         c.  The Shasta County Sheriff-Coroner formulates the Shasta County Jail rules,

12 policies, and  procedures which are implemented at his direction by the Deputy Sheriffs running and

13 managing the day to day operation of the Shasta County Jail including that of medical staff, and

14         d.  Thomas M. Bosenko was the Shasta County Sheriff - Coroner at all times

15 mentioned in this complaint but retired in December 2019, and

16         e.  Officer Kameron Lee, acting as a peace officer subject to department policy,

17 direction, and practice as an employee of the Anderson Police Department in Anderson, California

18 which was and remains a city department where operations and overall policy are ultimately subject

19 to the control and direction of the City of Anderson, and

20         f.  Fire Chief Lowe, acting as a peace officer subject to department policy, direction,

21 and practice as an employee of the Anderson Fire Protection District in Anderson, California where

22 operations and overall policy are ultimately subject to the control and direction of the Anderson Fire

23 Protection District, an independent agency.

24     65.   Based on the allegations in paragraphs "a ." through "f ." above, claims for damages

25 were mailed within 6 months of March 7, 2019, by plaintiff.  The claims were submitted pursuant to

26 the provisions of California Government Code §§910 et seq. More than forty-five days elapsed after

27 the submission of the claims with no response from the City of Anderson and the Anderson Fire

28

1  Prevention District; the claims are therefore deemed rejected.  The County of Shasta rejected the

2  claim against the county by written notice mailed October 16, 2019.

3                                    **SEVENTH CLAIM FOR RELIEF**

4                    **Enhanced Claim for Elder Abuse for Torture of McMillan**
                    **As to Officer Kameron Lee, City of Anderson, Fire Chief Lowe,**

5                          **and Anderson Fire Prevention District.**

6          66.     Plaintiff hereby incorporates by reference paragraphs 5, and 25 through 29.

7          67.     McMillan alleges that at all times mentioned herein Officer Kameron Lee was a peace

8  officer in that capacity as an employee of the City of Anderson police department subject to

9  department policy, direction, and practice.

10         68.     McMillan further alleges that at all times mentioned herein Fire Chief Lowe

11  was acting on behalf of the Anderson Fire Prevention District, an independent entity.

12         69.    The facts set out in the above statement of facts are incorporated by reference herein

13  establish that James I. McMillan was older than 65 years old at the time of the conduct described in

14  the above statement of facts, and was physically abused by Officer Kameron Lee acting in concert

15  and colluding with Fire Chief Lowe when forced into the backseat of Officer Kameron Lee's

16  Anderson Police car causing severe pain and injury all in violation of the Elder Abuse and

17  Dependent Adult Civil Protection Act.[3]  Further, McMillan was harmed by the acts of Officer

18  Kameron Lee as described in the Statement of Facts above. Thus Officer Kameron Lee's and Fire

19  Chief Lowe's conduct was a substantial factor in causing McMillan's harm. McMillan seeks

20  damages for the harm inflicted on him which includes invasion of privacy, intentional infliction of

21  pain, physical injury, mental suffering, emotional distress and humiliation.

22         70.    Further, plaintiff seeks the enhanced remedies of attorney fees and costs provided for in

23  the California Elder Abuse and Dependent Adult Civil Protection Act against Officer Kameron Lee,

24  City of Anderson, Fire Chief Lowe and the Anderson Fire Protection District.

25  / / /

26

27  ────────────

28         [3]  California  Welfare and  Institutions Code § 15657

1

2

3                               **EIGHTH CLAIM FOR RELIEF**

4                        **Enhanced Claim for Elder Abuse of McMillan**
          **Failure to Provide Needed Medication, and Inhuman Sleeping Conditions in Cell.**
5                 **As to Shasta County Sheriff-Coroner Thomas M. Bosenko.**

6          71.    Plaintiff hereby incorporates by reference paragraphs 3, 22 through 23, and 30 through

7    32 as if set forth in full.

8          72.    Plaintiff is informed and believes that the County of Shasta contracted with the Shasta

9    County Sheriff-Coroner Thomas M. Bosenko to manage and run the Shasta County Jail.

10         73.    Plaintiff is informed and believes and based thereon alleges that Sheriff -Coroner

11   Thomas M. Bosenko has a policy of  ignoring pain and suffering inflicted on those in the holding cell

12   due to ineffective padding provided inmates such as Plaintiff who was forced to sleep on cold, bare

13   concrete. McMillan experienced unwarranted pain and suffering in the Shasta County Jail while

14   sleeping on the cold hard concrete in the one of the Jail's holding cells.

15         74.  Plaintiff is informed and believes and based thereon alleges that Sheriff Thomas M.

16   Bosenko has a policy of minimizing the needs of inmates for prescribed medication.  McMillan was

17   causally denied his prescribed medication which treats his serious diseases by Jail Nurses DOE1 and

18   DOE2, thus putting McMillan unnecessarily at dangerous risk.  McMillan did in fact suffer

19   consequences with the denial of his necessary prescribed medications for diabetes by Jail Nurses

20   DOE1 and DOE2 with the occurrence of visual hallucinations during and continuing after release

21   from jail.

22         75.    Thus Sheriff Thomas M. Bosenko's policy was a substantial factor in causing

23   McMillan's harm. McMillan seeks damages for the harm inflicted on him which includes negligent

24   infliction of physical injury, physical suffering, and emotional distress.

25         76.    Plaintiff seeks the enhanced remedies of attorney fees and costs provided for in the

26   California Elder Abuse and Dependent Adult Civil Protection Act against Sheriff-Coroner Thomas

27   M. Bosenko.

28   / / /

1

2                                    **NINTH CLAIM FOR RELIEF**

3                          **False Arrest by Anderson Fire Chief Steve Lowe**.

4        77.   Plaintiff with this reference incorporates every paragraph in this complaint in this Ninth

5   Claim for Relief.  More specifically Plaintiff directs attention to paragraphs 6-12 above.

6        78.   McMillan was taken to Shasta County Jail where he was held for more than 24 hours.

7        79.   Upon signing an "Agreement on Release" in which McMillan was charged with 42400.2

8   ( c )HS and 148(A)(1) PC (see foot note 1 on page 5 above) and promising to appear at the Shasta

9   County Superior Court on May 10, 2019 at 8:30 a.m. for arraignment.  McMillan was released at

10   about 2:30 a.m. on March 10, 2019.

11       80.  McMillan along with his attorney showed up at the appointed time and location on May

12   10, 2019 only to discover that McMillan's arraignment on the charges by Fire Chief Lowe was not

13   on any court calender, and never was.

14       81. In compliance with California Government Code § 910 McMillan served a claim for

15   money or damages against Fire Chief Steve Lowe and his employer the Anderson Fire District for

16   false arrest.

17       82.   Subsequently, on January 29, 2020 the Shasta County District attorney's office served a

18   criminal complaint whereby the charges by Fire Chief Lowe were superceded by Section

19   41800/42400 of the Health and Safety Code dropping the charge of  148(A)(1) PC altogether.

20       84.   The charges in the criminal complaint of January 29, 2019 were specified as a charge of

21   open burning of a petroleum product, off the mark as well.  The small fires were in 3 small metal

22   cans.

23       85.   Due to the malicious, wanton, callous, reckless and wrongful nature of Defendant Fire

24   Chief Steve Lowe's misconduct as herein alleged and described, Plaintiff is entitled to recover

25   damages, and shall seek punitive damages.

26   / / /

27   / / /

28   / / /

-22-

1

2      **WHEREFORE**, Plaintiff prays judgment against Defendants as follows:

3      1.  For general damages in an amount according to proof, within the jurisdictional limits of

4   this court, and;

5      2.  For special damages in an amount according to proof, within the jurisdictional limits of

6   this court, and;

7      3.  For punitive damages as against Defendants Officer Kameron Lee, City of Anderson, Fire

8   Chief Lowe, Anderson Fire Protection District,  Sheriff-Coroner Thomas M. Bosenko, Dave Kent,

9   CFMG, and County of Shasta and Jail Nurses DOE1 and DOE2, and;

10      4.   For costs of suit incurred herein, including attorney's fees pursuant to 42 U.S.C. section

11   1988, and;

12      5.   For the enhanced remedies of attorney fees and costs provided for in the California Elder

13   Abuse and Dependent Adult Civil Protection Act against Officer Kameron Lee, Fire Chief Steve

14   Lowe and Thomas M. Bosenko, and;

15      6.  Plaintiff requests a Jury Trial pursuant to Local Rule 201 and the Federal Rules of Civil

16   Procedure;

17      7.  For such other and further damages as provided by law, or such further relief as the court

18   may deem just and proper.

19   Dated: June 24, 2020                                    /s/ James I. McMillan

20                                                           James I. McMillan, Esq.
                                                             In propria persona

21   / / /

22   / / /

23   / / /

24

25

26

27

28

Certification and Closing Under Federal Rule of Civil Procedure 11,  by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

 Date of signing: June 24, 2020                /s/ James I. McMillan_____