James I. McMillan, CBN 68584
4955 Via Lapiz
San Diego, CA 92122
Office: 858-646-0069
Direct: 858-412-0058
Fax: 206-600-4582
Email: jimcmillan@netscape.net

JAMES I. MCMILLAN, **in propria persona**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James I. McMillan,<br><br>Plaintiff,<br><br>vs.<br><br>County of Shasta, a public entity; City of Anderson, a public entity; Anderson Fire Protection District, a public entity; Fire Chief Steve Lowe in his official and individual capacity; Anderson Police Officer Kameron Lee in his official and individual capacity; Shasta County Sheriff-Coroner Thomas M. Bosenko ret., in his individual and official capacities; County Jail Captain Dave Kent, in his individual and official capacity; California Forensic Medical Group, Inc., a California Corporation; Jail Nurse Linda Smith, Jail Nurse Amanda Ream and DOES 1-50; individually, jointly, and severally,<br><br>Defendants. | Case No.: 2:20-cv-00564-JAM-EFB<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES.**<br><br>42 U.S.C.  1983<br><br>Supplemental Claims re:<br>False Arrest,<br>Elder Abuse<br>Welfare and  Institutions Code § 15657<br>Bain Act, Civil Code § 51.2<br>Negligence Per Se<br>Negligence<br><br>**JURY TRIAL DEMANDED**<br><br>Judge:  Hon. John A. Mendez.<br>Courtroom:   6, 14th Floor |

## PARTIES TO THIS COMPLAINT

1.   The Plaintiff

| | |
|---|---|
| Name | James I. McMillan |
| Street Address | 6059 Dirac Street |
| City and County | San Diego, San Diego County |
| State and Zip Code | California  92122 |
| Telephone Number | (858) 646-0069 |

2.  The Defendants

a.  Name                Steve Lowe
    Street Address      1925 Howard Street
    City and County     Anderson, Shasta
    State and Zip Code  California, 96007
    Telephone Number    (530) 378-6699

b.  Name                Anderson Fire Protection District
    Street Address      1925 Howard Street 96007
    City and County     Anderson, Shasta
    State and Zip Code  California, 96007
    Telephone Number    (530) 378-6699

c.  Name                Officer Kameron Lee
    Street Address      2220 North Street
    City and County     Anderson, Shasta
    State and Zip Code  California, 96007
    Telephone Number    (530) 378-6600

d.  Name                City of Anderson
    Street Address      1887 Howard Street
    City and County     Anderson, Shasta
    State and Zip Code  California, 96007
    Telephone Number    (530) 378-6626

e.  Name                Jail Nurse Linda Smith
    Street Address      1655 West St. County Jail
    City and County     Redding, Shasta
    State and Zip Code  California, 96001
    Telephone Number    (530) 245-6100

f.  Name                Jail Nurse Amanda Ream
    Street Address      1655 West St. County Jail
    City and County     Redding, Shasta
    State and Zip Code  California, 96001
    Telephone Number    (530) 245-6100

g.  Name                Shasta County-Coroner Sheriff Thomas M
                        Bosenk, ret.
    Street Address      unknown
    City and County     unknown
    State and Zip Code  unknown
    Telephone Number    unknown

h.  Name                County of Shasta
    Street Address      1450 Court Street, Suite 308B
    City and County     Redding, Shasta
    State and Zip Code  California, 96001
    Telephone Number    (530) 225-5550

i.   Name  California Forensic Medical Group, Inc., California Corporation
     Street Address      2511 Garden Road Suite A160
     City and County     Monterey, Monterey County
     State and Zip Code  California, 93940
     Telephone Number    (831)-649-8994

j.   Name                Dave Kent
     Street Address      1655 West St. County Jail
     City and County     Redding, Shasta
     State and Zip Code  California, 96001
     Telephone Number    (530) 245-6100

## BASIS FOR JURISDICTION AND VENUE

3.   This is a civil rights action arising from Defendants' unreasonable, unlawful actions, and deliberate indifference to the age and serious medical needs of pre trial detainee, James I. McMillan resulting in unwarranted infliction of mental distress, physical pain, injury, and serious consequences.  This action is brought pursuant to 42 U.S.C. §1983, the US Constitution and amendments thereto.  This Court has original Federal Question Jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, over Plaintiff's claims for Violation of Civil Rights 42 U.S.C. §1983.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising under state law.

## INTRADISTRICT ASSIGNMENT

4.   All the acts and omissions alleged in this SECOND AMENDED COMPLAINT FOR DAMAGES (hereinafter "Complaint") occurred in the State of California, County of Shasta. Pursuant to Eastern District Civil Local Rule 120(d) this action is properly brought in the Sacramento Division of the United States District Court for the Eastern District of California.

## PRELIMINARY FACTS

5.   The plaintiff James I. McMillan (McMillan) born in 1941, was 77 years old in March  2019, is approximately 6 feet and 3 inches tall, and weighed approximately 245 lbs at the time of his arrest. In addition he was suffering from various documented medical conditions, including diabetes, high blood pressure, and heart arrhythmia which all require regularly scheduled prescribed medication. McMillan has lived in San Diego, California since 1963.

**Anderson Firemen Arrive**

6.   At about 10 p.m. March 7, 2019, McMillan saw a fire truck in the street in the front of 1892 Diamond Street, Anderson, California. McMillan went out and saw a group of 6 or so firemen standing in the driveway. He asked what was going on. One of the firemen said a fire had been reported at the address. McMillan told the firemen there was no fire. One of the group demanded to look in the fenced area surrounding the house, i.e., the "curtilage." McMillan said they needed a warrant. One of the firemen made a phone call, then retorted a "warrant," is on the way. That later meant that the warrant was to be the presence of the Fire Chief, rather than an order signed by a judge. The demand for a warrant seemed to upset the fireman who McMillan believes was Captain Bassham. Bassham mentioned he was a second year law student. McMillan relented, under protest, and accompanied the group to the backyard, unlocking a gate. There was no fire. There were three small metal 8 oz coffee cans near each other sitting on the bottom of a nearly empty large concrete swimming pool (50 ft x 25 ft x 4 to 10 ft) at about 6ft depth.

7.   The firemen returned to the driveway in front of the house and McMillan locked the side gate and went back inside the home. After maybe 10 minutes passed, one of the firemen came and banged on the front door. McMillan answered the door and was told to come out into the driveway, that the firemen were not through with him. McMillan, escorted by the fireman who fetched him, went to the driveway where the group of firemen were standing. Their demeanor seemed hostile and aggressive.

8.   At that point McMillan noticed that Anderson Fire Chief Steve Lowe (Fire Chief Lowe) was now present, wearing a badge and official accouterments. Apparently the Firemen had been chatting with Fire Chief Lowe for a few minutes before McMillan was informed that the firemen were not finished talking with him. Three or four City of Anderson police officers also arrived about that time. Fire Chief Lowe asked McMillan no questions concerning any activity McMillan might have been involved in, but then, in a hostile and aggressive tone demanded that McMillan provide his name, age, and present his

driver's license.  McMillan provided his name and address in San Diego but refused to provide any further information, including his age or driver's license.

9.      McMillan calmly explained that he had not been driving and that a driver's license was only required to be produced on demand by a peace officer in connection with the operation of a motor vehicle.  Fire Chief Lowe became visibly upset.  That along with McMillan's early demand for a warrant clearly upset the Fire Chief.  Thereafter, the Defendants, and each of them retaliated for McMillan asserting his rights guaranteed by the Fourth Amendment to the United States Constitution, i.e., to be free from unreasonable searches and seizures.

10.     Anderson Police Officer Kameron Lee pulled out his cell phone, verified McMillan's address and obtained his birth date, passing along the information to Fire Chief Lowe.

### McMillan is Arrested by Fire Chief Lowe

11.     Fire Chief Lowe prepared a citation citing two code violations; without discussion, Fire Chief Lowe then handed the citation to McMillan to sign.  McMillan refused to sign without hearing any explanation of the charges.  Fire Chief Lowe became even more upset. Acting under color of law, and in retaliation for asserting his rights, Fire Chief Lowe had falsely charged McMillan without probable cause with violations of Cal. Health & Safety Code § 42400.2(c) and Cal. Penal Code § 148(A)(1) PC.[1]

---

[1]

**California Code, Health and Safety Code - HSC § 42400.2( c )**
"(c) Any person who owns or operates any source of air contaminants in violation of Section 41700 that causes actual injury, as defined in subdivision (d), to the health or safety of a considerable number of persons or the public is guilty of a misdemeanor and is subject to a fine of not more than fifteen thousand dollars ($15,000) or imprisonment in the county jail for not more than nine months, or both."

**California Penal Code - PC § 148.(a) (1)**
"Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

1    12.  With no discussion, immediately after McMillan refused to sign the citation

2  prepared by Fire Chief Lowe, Fire Chief Lowe placed McMillan under arrest followed by

3  handcuffs immediately slapped on McMillan by Officer Lee.   Defendants Lowe, Lee, and

4  DOE defendants were aware that the Shasta County Jail was one of the most dangerous jails

5  in California, with one of the highest death rates for detainees.  Defendant were aware of the

6  danger that they were exposing McMillan to from the outset.  They were also aware that

7  McMillan had asserted his rights under the U.S. Constitution, which angered them.

8    13.  After he handcuffed McMillan, Officer Kameron Lee, without comment, went

9  directly to McMillan's left hip pocket where a bulge indicated a wallet, without checking

10  other pockets, seized McMillan's wallet, pulled out his driver's license and examined it.

11  Officer Kameron Lee then replaced the license in the wallet and stuffed the wallet back into

12  McMillan's jacket pocket without commenting or checking any other of  McMillan's other

13  pockets.  Officer Lee did not find the knife carried in McMillan's left pants pocket since he

14  had not bothered to look. Officer Lee was only interested in seeing McMillan's driver's

15  license which McMillan had refused to produce since there is no legal requirement to do so

16  under California law unless driving a vehicle on a public road. Officer Lee definitely made

17  no search of McMillan for weapons.

18    **Officer Kameron Lee Threatens to Slam His Car Door on McMillan**

19    14.   Without further discussion with anyone, Officer Kameron Lee then took

20  McMillan to his police cruiser, opened a door to the back seat and ordered McMillan to get

21  in.  McMillan objected that the handcuffs were too tight. Officer Kameron Lee said they

22  were not, that he had checked them. The cuffs were sufficiently tight that McMillan was

23  unable to bend his arms at the elbow to maneuver into the back seat from a standing

24  position.  McMillan was just too tall to sit down with his arms behind his back.  Plus the

25  driver's seat was back too far, leaving no room for McMillan's knees to fit between the back

26  of the back seat and the back of the front seat, about 15  inches. Without regard to the

27  obvious difficulty McMillan would have in getting into the small back seat of the cruiser,

28  Officer Kameron Lee offered McMillan no assistance getting into the vehicle whatsoever,

1  and again just ordered McMillan to get in the car saying "I'm going to just close the door on

2  you," an obvious threat to injure McMillan, and in further effort to retaliate against

3  McMillan for asserting his rights guaranteed by the U.S. Constitution.

4      15.   Officer Kameron Lee then again threatened he was going to slam the door on

5  McMillan.  To avoid being injured by the door, McMillan just dropped into the back seat

6  lengthwise twisting to his right side without any way to cushion his fall.  The fall caused

7  intense pain in McMillan's shoulders as his 245 pound body hit the hard plastic back seat,

8  twisting his arms, causing him great physical pain and injury.  Officer Kameron Lee then

9  told McMillan to get his feet inside, again threatening that he was going to slam the door.  In

10  an attempt to avoid further injury McMillan wiggled further into the car.  Then without

11  further warning Officer Kameron Lee slammed the door shut shoving McMillan's feet into

12  the car causing great pain in McMillan's right knee due to a prior recent injury.  Due to

13  inability to see whether or not his feet were sufficiently inside the car to avoid being hit by

14  the door being slammed, McMillan's feet remained subject to being struck by the door as

15  Officer Lee slammed it shut.  Officer Lee gave no warning that McMillan's feet remained

16  subject to being struck by the door being slammed on his feet.  Thus McMillan alleges that

17  Officer Lee intentionally slammed the door on McMillan's feet causing great pain in

18  McMillan's previously injured knee, and feet.

19      16.  Due to his physical size and the fact that his hands were cuffed behind his back,

20  McMillan was unable to sit upright in the vehicle. Instead, he was left laying painfully on

21  his right side scrunched up on the hard plastic bench that comprised the back seat of Officer

22  Kameron Lee's police cruiser.

23      17.   Officer Kameron Lee left McMillan, lying on his side handcuffed and suffering

24  intense physical pain in the car for in excess of ten minutes while Officer Kameron Lee

25  chitchatted with the other police officers and firemen, including Fire Chief Lowe at the rear

26  of the police cruiser.  Fire Chief Steve Lowe finally approached Lee's cruiser, opened the

27  back door and with a tormenting tone asked McMillan "Are you willing to sign the

28  citation?"  McMillan refused to sign the citation whereupon McMillan was then transported

1  to Shasta County Jail by Officer Lee where D-McMillan was booked without incident for

2  the original violation of H&S 42400 and 148(a)(1) PC obstructing or delaying, both

3  misdemeanors.

4          18.  McMillan suffered great pain in his wrists and shoulder joints while twisted on

5  his right side, with his feet jammed against the car door closed against them by Officer

6  Kameron Lee for approximately 20 minutes before being removed from the police cruiser.

7  The purpose of causing McMillan to fall into the cruiser is clear - the desire on the part of

8  both the Fire Chief and Officer Lee were to coerce McMillan into signing the citation.  Thus

9  obviating a trip to the Shasta County Jail some ten miles away in the middle of the night.

10         19.   To date, McMillan continues to suffer varying degrees of  pain in his left

11  shoulder which is directly attributable to Officer Kameron Lee's intentionally and

12  unnecessarily rough treatment which Officer Kameron Lee inflicted with the complicity of

13  Fire Chief Lowe merely because McMillan refused to sign Fire Chief Lowe's citation, and

14  otherwise asserted his rights under the U.S. Constitution.

15                     **McMillan is Further Abused at Shasta County Jail.**

16         20.  McMillan was transported to Shasta County Jail, which was subject to minimum

17  standards for care of inmates imposed by California law, by the Board of State and

18  Community Corrections pursuant to its authority according to California Penal Code section

19  6030, specifically promulgated in Title 15, California Code of Regulations, Division I,

20  Chapter 1, Subchapter 4, which are incorporated in their entirety by reference herein. [2]

21  Section 1005 provides:

22         Nothing contained in the standards and requirements hereby fixed shall be
            construed to prohibit a city, county, or city and county agency operating a
23         local detention facility from adopting standards and requirements governing
            its own employees and facilities; provided, such standards and requirements
24         meet or exceed and do not conflict with these standards and requirements. Nor
            shall these regulations be construed as authority to violate any state fire safety
25         standard, building standard, or health and safety code.

26  Title 15, CCR § 1005

27  _____

28         [2] http://www.bscc.ca.gov/wp-content/uploads/Adult-Titles-15-Effect-4-1-17.pdf

1    21.   The Shasta County Jail has one of the highest, if not the highest, inmate mortality

2    rate in the State of California. Upon arrival at the Shasta County Jail in Redding, California

3    plaintiff was handed over to the Jail's intake person on duty who took possession of

4    McMillan's personal property including his shoes and the contents of his pockets, including

5    a small container of acarbose tablets, a diabetes medication prescribed to McMillan by his

6    physician.  McMillan further alleges that the design of the facilities was governed by

7    California Code of Regulations, Title 24, part 1 and 2, which McMillan incorporates by

8    reference herein. [3]

9    22.   DOE Jail Guy removed a small bottle of pills along with a **knife**, keys,

10   flashlight, and wallet from McMillan's pockets.  Contrary to the requirements of Penal Code

11   section 851.5, Defendants did not make available a means of contacting his family, an

12   attorney, or a bail bondsman by way of a free telephone call, or even a local call to a non-

13   landline.  Toll calls were incompatible with modern voice over IP phone systems.

14   Defendant was in a precarious health situation, and such ability to contact family was

15   critical.

16   23.  DOE Jail Guy asked about any medical conditions McMillan had.  McMillan

17   informed said Defendant that McMillan had been diagnosed by a medical doctor as

18   suffering from diabetes, high blood pressure, heart arrhythmia, and at high risk of stroke. At

19   the time, McMillan was taking medications for all these conditions, including a prescribed

20   blood thinner to reduce the risk of stroke. A jail nurse was called by DOE Jail Guy to

21   interview McMillan.  Plaintiff alleges that the jail nurse was unqualified to conduct such

22   interview, that all Defendants were aware of such unfitness, and that the medical decisions

23   and care thereafter provided, and alleged *infra*, failed to satisfy the minimum standards in

24   the local medical community, the minimum standards imposed by the Commission on Peace

25   Officer Standards and Training, and the minium standards imposed by Penal Code section

26   6030, and  Title 15, California Code of Regulations, Division I, Chapter 1, Subchapter 4.

27

28        [3] http://www.bscc.ca.gov/wp-content/uploads/Adult-Title-24-SOUL-Effective-1.1.2020.pdf

1   Defendants' actions described in this paragraph were reckless, and needlessly exposed

2   McMillan to a substantial risk for serious harm.  The initial failure to properly monitor

3   McMillan's diabetic condition, and other health conditions which all require precise and

4   regular attention, coupled with the stress attendant to having been roughly treated and placed

5   in jail, were reckless and placed him at risk of an uncontrollable cascade of diabetic crisis,

6   stroke, and possible death.

7          24.   When Jail Nurse Linda Smith showed up she examined McMillan's small

8   container of acarbose taken from McMillan's pockets. She ask McMillan what it was for.

9   McMillan told her it was a diabetes drug. She said it was not in an original bottle and could

10  not be taken into the jail. She threw it in the trash. She then asked McMillan what other

11  drugs he was taking for his medical conditions. He told her as best he remembered - there

12  were 8 or more with odd names:  Acarbose to block the digestion of carbohydrate to

13  glucose, NPH insulin a long term acting insulin to help keep blood sugar down, Nadolol for

14  heart arrhythmia, Metformin to help keep blood sugar down, Telmisartan for high blood

15  pressure, Verapamil for high blood pressure, plus a blood thinner to prevent clotting. There

16  were a few other prescribed medications he was taking at the time, but told Jail Nurse Linda

17  Smith that he was unable to recall their names. At no point in time did Jail Nurse Linda

18  Smith or anyone else during McMillan's confinement either make McMillan's required

19  prescribed medications available to him or otherwise provide him with any reasonably

20  available substitutes.   Defendants' actions described in this paragraph were reckless, and

21  needlessly exposed McMillan to a substantial risk for serious harm.

22         25.    Jail Nurse Linda Smith then used a small device to punch a hole in one of

23  McMillan's fingers to get a drop of blood to test his sugar level. She showed him the results

24  on her glucose meter - 145mg/ml. McMillan told her it was high and would get higher if he

25  were not given his diabetes medication. She ignored McMillan's pleas, and instead of taking

26  steps to ensure he timely received his prescribed medications, she retorted "You're fine."

27  Defendants' actions described in this paragraph were reckless, and exposed McMillan to a

28

1  substantial risk for serious harm.  At that point, 145 mg/ml was already too high, and

2  McMillan was harmed.

3      26.    McMillan explained to Jail Nurse Linda Smith that he generally maintains his

4  blood glucose level below 120 mg/dl, taking 15 units of NPH insulin in the evening just

5  before bedtime and 20 units around 2 pm in the afternoon. He supplements this regimen

6  with Acarbose and Metformin as prescribed by his treating physician. He complained to the

7  nurse that he needed some insulin and that his blood glucose would get higher and

8  potentially put him at great risk without insulin and/or his prescribed medications.  Making

9  no comment, the nurse went over to chat with Officer Kameron Lee and DOE Jail Guy.  At

10 no time did Jail Nurse Linda Smith or any other person at the jail facility provide McMillan

11 with his necessary prescribed medications or otherwise ensure that he received them during

12 the entirety of the time he was incarcerated in spite of being fully informed of McMillan's

13 medical needs. Manifesting indifference, Jail Nurse Linda Smith was very dismissive of

14 McMillan's various medical conditions. Defendants' actions described in this paragraph

15 were reckless, and exposed McMillan to a substantial risk for serious harm.  High levels of

16 sugar in a diabetic reduce the flow of blood in small capillaries, limiting delivery of oxygen

17 to the brain and other organs, creating permanent damage.  Such damage presents visibly in

18 an MRI of the brain in white hyperintensities.  The Defendants conduct alleged herein

19 caused some extent of permanent brain injury in McMillan.

20     27.    Jail Nurse Linda Smith told McMillan diabetic meals were available but, for an

21 unknown reason jail deputies knowingly and intentionally refrained from giving, or even

22 offering him one. The food McMillan was given for breakfast, lunch and dinner on Friday,

23 March 9th was heavily carbohydrate laden – poison to a diabetic.  McMillan gave the

24 deserts to other prisoners in the holding room, and just did not eat much of the other high

25 carbohydrate food offered.  Reflecting indifference, and dishonesty, Linda Smith falsified an

26 entry into the medical log.  She claimed to have visited him when in fact she had not.  She

27 even faked his vitals. Defendants' actions described in this paragraph were reckless, and

28 exposed McMillan to a substantial risk for serious harm.

28.   After being searched by DOE Jail Guy and having his property taken McMillan was taken by a deputy to a holding room. McMillan was given a cloth which the jailers called a "blanket," as they ordered him into the holding room and locked the door. The so called "blanket" was a thin cloth about 3/16 of an inch thick. McMillan was in the room from about 12 p.m. Thursday though about 2 a.m. Saturday – a period of no less than 26 hours. The lights were never turned off, making it exceedingly difficult to sleep.  The lack of sleep, the stress, and the failure to provide sufficient bedding and sleeping equipment, compounded the injury that McMillan suffered as a result of his rising sugar levels, which McMillan could feel.  Defendants' actions described in this paragraph were reckless, exposed McMillan to a substantial risk for serious harm.  Defendants were indifferent to McMillan's needs, or for that matter by all appearances, any of the other inmates needs.

29.   The holding room was not square but was trapezoidal in shape of about 90 sq. ft. usable area of bare, cold concrete for sleeping including the bare, cold concrete benches along the two longer walls. When McMillan was placed in the holding room there were about 10 other prisoners already in the room with the addition of McMillan for a total of 11. Other prisoners who had been in the room for more than a day told McMillan that there had been more than 20 in the  holding room at one time.  Another prisoner in the room said county law enforcement had been doing a drug sweep for a couple days, cracking down on methamphetamine users.  There were no bunks in the holding room.  The seating benches along two walls were cold, bare concrete about 16 inches wide.  The holding room floor was cold, bare concrete as well, and was filthy. The deputies ruthlessly abused another inmate in the hall outside the holding room.  The deputies noticed McMillan observing a young, Hispanic man, prone on the ground with the four deputies twisting his wrists, while the poor fellow screamed in agony..  McMillan overheard the deputies state that they were going to put him in the "cage."  McMillan was able to view through window as the victim, who entirely compliant, was dragged by four deputies down the hall.   McMillan learned that the cage was used for summary punishment, and comprised of a small cage where it was impossible to sit down completely.   Thereafter, the deputies taped paper over the window

preventing them from seeing in and McMillan from seeing out.  The conditions did not
come close to meeting the minimum standards for a detention facility temporary holding cell
or room as set forth in 24 CCR 1231.2, which provides, in pertinent part as to which were
violated:

A.    Contain a minimum of 10 square feet (0.93 m2) of floor area per
      inmate;

B.    Be limited to no more than 16 inmates;

C.    Be no smaller than 40 square feet (3.7 m2) and have a clear ceiling
      height of 8 feet (2438 mm) or more;

D.    Contain seating to accommodate all inmates as required in Section 1231.3;

E.    Maximize visual supervision of inmates by staff; and

F.    When located in a temporary holding facility, the cell or room shall be
      equipped with a bunk if inmates are to be held longer than 12 hours.

[24 CCR 1231.2]

Defendants' actions described in this paragraph were reckless, brutal, and exposed
McMillan to a substantial risk for serious harm.

30.    McMillan was in the holding room for more than 24 hours, thus forced to
sleep with only a small, thin 3/16" blanket for padding, warmth, and to block out the lights
which were never turned off, only dimmed a bit in the evening. At McMillan's size, 6'3"
and 245 lbs, the blanket was too small to serve each of those purposes at the same time. A
night of fitful sleeping on concrete was not just uncomfortable, but resulted in sore spots and
continuous back pain.  McMillan asked a Deputy for a second blanket, but the Deputy
refused his request with the retort "Only one blanket." Defendants' actions described in this
paragraph were reckless, and exposed McMillan to a substantial risk for serious harm.

31. After McMillan entered the room he noticed trash on the concrete floor in the
room, empty lunch bags, empty milk cartons and food wrappers plus various scraps. The
toilet paper roll was on the floor soaked.  It had been wet for some time and was never
replaced during the 26 hours or so while McMillan was in the room. McMillan picked up
the larger pieces of trash at some point and set those by the door for removal along with

1   used meal bowls.  After a few hours a deputy eventually collected the empty bowls along

2   with the trash and swept the floor around the door and thanked McMillan for cleaning up a

3   bit. When McMillan complained about the remaining trash, the deputy said the holding

4   room would be thoroughly cleaned later. That did not happen in the 26 hours or so

5   McMillan was in the holding room. Defendants' actions  described in this paragraph were

6   reckless, and exposed McMillan to a substantial risk for serious harm.

7        32. There were a couple short fights with punches landed between prisoners that

8   wanted to sleep, and loud, shouting, seemingly crazed prisoners. No effort was made by the

9   jailers to separate the prisoners with obvious symptoms of mental illness creating a

10   predictably dangerous condition in the holding room. Defendants' actions and the conduct

11   that they allowed to occur as described in this paragraph was reckless, and exposed

12   McMillan to a substantial risk for serious harm.

13        33.  Several hours after being placed in the holding room, a jail nurse,  Jail Nurse

14   Amanda Ream, different from Jail Nurse Linda Smith who had tested McMillan's blood

15   sugar on his arrival at the jail, came by the holding room to check on McMillan's glucose

16   and blood pressure.  Predictably, his glucose had risen to 172 mg/dl from145mg/dl when

17   McMillan was first brought into the jail a few hours earlier. As he had done with Jail Nurse

18   Linda Smith, McMillan told Jail Nurse Amanda Ream that he needed insulin or the level

19   would continue to go up. She said that she was aware of McMillan's medical needs.  But,

20   neither Jail Nurse Linda Smith nor Jail Nurse Amanda Ream nor anyone else ever provided

21   McMillan with any of his essential prescribed medications, including his needed insulin.

22   McMillan is informed and believes that sometime Friday, March 9, 2019, McMillan's

23   cousin, Jerry Hopson attempted to deliver McMillan's prescribed medications in original

24   pharmacy prescription labeled bottles to the jail.  Jerry Hopson later told McMillan a nurse

25   was called by a deputy and made a list of the prescribed medications but the prescribed

26   medications offered by McMillan's cousin were refused by the nurse.  McMillan's family

27   was fully aware of the importance of McMillan's medications to his well being. Defendants'

28

1  actions described in this paragraph were reckless, and exposed McMillan to a substantial

2  risk for serious harm.

3  **McMillan Sustains Injuries at The Shasta County Jail**

4  34.    McMillan was subjected to more than 24 hours confinement in the Shasta

5  County Jail. During this time he endured lack of sleep, the knowing and intentional

6  withholding of essential prescription medications, and terrible living conditions causing

7  body pain in the holding room as described above.  He was never offered a bunk or food fit

8  for a diabetic.   Both prescribed medications NPH insulin, and Metformin McMillan

9  regularly uses to control his blood glucose level to less than 120mg/deciliter were

10  intentionally withheld along with his blood pressure, heart arrhythmia and anti blood

11  clotting medications.  Despite being told by Jail Nurse Linda Smith that diabetic meals were

12  available, McMillan was not provided food fit for a diabetic, but was provided high

13  carbohydrate meals instead while incarcerated.  The Deputies bringing the food trays, never

14  asked or offered any specially prepared diabetic meal, offering just the same as everyone

15  else in the holding room received.  McMillan was disoriented due to high sugar, suffered

16  brain damage, and organ damage, Defendants' actions described in this paragraph exposed

17  McMillan to a substantial risk for serious harm.

18  35.   About 2 a.m. March 10th during the course of being released from the Shasta

19  County McMillan began experiencing visual hallucinations as a result of having been

20  deprived of his necessary prescribed diabetes medications. White surfaces appeared to be

21  covered in mats of waving light brown pine needle like images. He did not mention this to

22  the Deputies out of fear he would be held for medical examination where he would likely

23  only continue to be deprived of his medication and access to medical care. The

24  hallucinations progressed to static images of something like Egyptian hieroglyphics on white

25  surfaces by the time he got home about 3 a.m. on Saturday, March 10, 2019.  Defendants

26  harmed Plaintiff.

27  / / /

28  / / /

**McMillan is released from the Shasta County Jail**

36.     During the release process Deputy Sheriff McQuillan prepared the "Agreement on Release." The Deputy used a regular ball point ink pen to fill out the top portion of the "Agreement on Release," plus the "A" portion but gave McMillan a small pen to sign with that wrote in very light blue ink and was incapable of being pressed on to the paper because it was flexible. Nothing either the deputy or McMillan wrote on the form after the A portion was readable on McMillan's copy of the form "Agreement on Release."

37.     On the "Agreement on Release" form the booking charges were written as "42400.2(c)HS  and 148(A)(1) PC" without any explanation.  The booking charges appeared to have been based on a full page, single spaced fax that seemed to have been prepared by Anderson Fire Protection District personnel which Deputy McQuillan paused to read and study for about 15 minutes before preparing the Agreement on Release. After the Deputy finished reading the document, for some unknown reason, he shredded it.  McMillan first learned of the specific code violations he had been cited for upon release from Shasta County Jail where the violations were identified on the "Agreement on Release" form, but still no explanation as to the contents of the cited codes. McMillan was arrested and incarcerated in the Shasta County Jail for about 26 hours, from late Thursday, March 8, 2019 until about 2 a.m. Saturday, March 10, 2019.

38.     The Agreement on Release set McMillan's arraignment on May 10, 2019, at 8:30 a.m. and directed that McMillan appear at the court located at 1500 Court Street in Redding, California, and further directed that the court calendar be checked for the court room where he should appear. McMillan retained defense counsel Mark Cibula and both appeared on May 10, 2019, but neither McMillan nor counsel found any mention of McMillan's name in the two lists of those to be arraigned in either dept 9 or 10 at 10:00 am on May 10, 2019.  Counsel appeared along with McMillan in Dept 10, making a record of McMillan's appearance. McMillan was present and stood when counsel brought to the court's attention that McMillan had appeared pursuant to the Agreement on Release.

39.  The charges made against McMillan on March 10, 2019 specified in the "Agreement on Release" by Fire Chief Lowe were later "superceded' by the Shasta County District Attorney when McMillan was charged in a criminal complaint filed with the Shasta County Superior Court on January 29, 2020 with "PROHIBITED BURNING, in violation of "Section 41800/42400 of the Health and Safety Code, a Misdemeanor." McMillan's defense counsel, Mark Cibula, obtained a copy of  Fire Chief Lowe's "Investigative Narrative" from the Superior Court clerk which had been filed in connection with the arraignment of McMillan.

40.  In Fire Chief Lowe's "Investigative Narrative," Defendant Lowe submitted numerous false statements to the Shasta County Superior Court to support McMillan's criminal arraignment. For example in the narrative, Lowe deliberately fabricated evidence of conversations that never occurred. Moreover, Lowe falsely indicated that he had personally participated in events of which he had no personal knowledge.

41. Specifically, Lowe falsely stated that:

a.   McMillan was burning diesel and that McMillan admitted to burning diesel, both of which were outright fabrications. No diesel was ever present in the backyard, let alone burned that evening.

b.   Lowe had informed McMillan of the specific provisions and alleged violations but that conversation never occurred. Lowe only presented a citation to McMillan and told him to sign it without explanation.

c.   McMillan had consented to Lowe entering the backyard and that Lowe had personally inspected the backyard. But, this never occurred. Indeed, Lowe never set foot in the backyard.

d.   Lowe had informed McMillan that signing the citation was not an admission of guilt but a promise to appear. That conversation never occurred.

e.   An odor of gasoline and a burning smell were noticeable from the front of the residence. Indeed, the wind was blowing the opposite direction

1    that evening. No such odor or smell would have been detectable from

2    the firemen's location when they initially arrived. Indeed, by the time

3    the firemen arrived, there was no fire. There were only three small

4    metal 8 oz coffee cans near each other sitting on the bottom of a nearly

5    empty large concrete swimming pool (50 ft x 25 ft x 4 to 10 ft) at about

6    6ft depth.

7    f.    McMillan refused to identify himself. Indeed, McMillan provided his

8          name multiple times. McMillan also provided his home address in San

9          Diego.

10   g.    Lowe personally observed the backyard, the pool, and the three cans at

11         the bottom of the pool. Lowe never entered the backyard that evening,

12         let alone made any of these observations.

13   The above statements do not encompass the entirety of the deceptive statements

14   submitted to the Shasta County Superior Court by Lowe, but are representative only.

15   42. At the time the document was submitted, all of the above false statements were

16   made to secure McMillan's conviction as to the misdemeanor criminal charges.

17                                 **PARTIES AND PROCEDURE**

18   43.  City of Anderson ("CITY") is a public entity, duly organized and existing under

19   the laws of the state of California.  Under its authority, the CITY owns, operates, manages,

20   directs and controls the Anderson Police Department, which employs and/or is responsible

21   for Defendant Officer Kameron Lee.  Pursuant to Government Code § 815.2, the CITY is

22   vicariously liable for the state law torts of its employees and agents, including Defendant

23   Officer Kameron Lee.

24   44.  The Anderson Fire Protection District ("AFPD") is a public entity duly organized

25   and existing under the laws of the state of California acting as the Anderson Fire

26   Department. Under state authority, the AFPD through its board of directors owns, operates,

27   manages, directs and controls the Anderson Fire Department, which employs and/or is

28   responsible for Defendant Fire Chief Steve Lowe.  Pursuant to Government Code § 815.2,

the AFPD is vicariously liable for the state law torts of its employees and agents, including Defendant Fire Chief Steve Lowe.

45.  Defendant County of Shasta ("COUNTY") is a public entity, duly organized and existing under the laws of the State of California. Pursuant to Government Code § 815.2, the County of Shasta is vicariously liable for the state law torts of its employees and agents. Under its authority, the County of Shasta operates the Shasta County Jail, the Shasta County Sheriff's Office and employs the Sheriff and his deputies.

46. Defendant California Forensic Medical Group, Inc. ("CFMG"), was at all times herein mentioned, a California Corporation licensed to do business in California, with its corporate head quarters located in Monterey, California.  Defendant CFMG provided medical, mental health, and nursing care to pretrial and post-conviction detainees and prisoners in Shasta County Jails by agreement with the County of Shasta.

47. Defendant Thomas M. Bosenko at all times mentioned herein, was employed by the County of Shasta as Sheriff-Coroner for the county, and he was acting within the course and scope of that employment.  In that capacity, Thomas M. Bosenko was a policy making official for the  County of Shasta.  Further, Thomas M. Bosenko was ultimately responsible for provision of medical care to inmates and jail conditions, and all County of Shasta and "CFMG" policies, procedures, and training related thereto.  He is being sued in his individual capacity.

48.  Defendant Captain Dave Kent at all times mentioned herein, was employed by Defendant County of Shasta as Captain of the Custody Division, including the jail, for the County of Shasta, and he was acting within the course and scope of that employment. Plaintiff alleges that in that capacity Defendant Dave Kent was responsible for the general management and control of the Custody Division, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or the Undersheriff.

1       49.   Plaintiff alleges on information and belief the Jail Nurses Linda Smith and

2   Amanda Ream were employees of CFMG who were inadequately trained and thus CFMG

3   bears responsiblity for the nurses' failure to recognize James I. McMillan's medical needs

4   and assure adequate care for James I. McMillan while held in the jail through denial of

5   insulin ultimately resulting in his increasing blood sugar leading to the visual hallucinations

6   McMillan suffered during the course of being released from Shasta County Jail and

7   afterward.

8   **STATEMENT OF CLAIMS FOR RELIEF**

9   **FIRST CLAIM FOR RELIEF**

10  **Violation of Constitutional Rights - 42 U.S.C.  1983**
    **Fourth Amendment – Unreasonable Search and Seizure**

11  **As to Defendant Officer Kameron Lee, City of Anderson, Fire Chief Lowe, and**

12  **Anderson Fire Protection District, and DOES 1 through 50.**

13      50.   Plaintiff hereby incorporates by reference paragraphs 1 through 49 plus all

14  other paragraphs of this complaint as if set forth in full.

15      51.   At all relevant times alleged herein, Defendant Officer Kameron Lee was acting

16  under color of law within the course and scope of his duties as an Anderson Police officer

17  employed by the City of Anderson's Police Department.  Officer Kameron Lee violated

18  Plaintiff's constitutional rights when he removed McMillan's wallet and examined it

19  without a warrant as described in paragraph 13 above.  Officer Kameron Lee committed said

20  acts without justification or authority, and without probable cause, exigency, or court order.

21  These Defendants, and each of them, including but not limited to Fire Chief Lowe and/or

22  Kameron Lee were present and knowingly and intentionally acted either directly or as an

23  "integral participant" [4] in the events described herein. Defendants authorized, encouraged,

24  directed, or assisted the arresting others in procuring the search and seizure of the McMllan

25  or participated in or ratified the unlawful search and seizure.  The conduct and each of them

26  was a substantial factor in causing harm to plaintiff. Moreover, these Defendants, and each

27  _____

28  [4]  See "integral participant" under **Boyd v. Benton County** 374 F.3d 773 (9th Cir. 2004).

of them, were at all times relevant acting under color of law within the course and scope of

their duties as employed by their respective agency employers. As a direct and proximate

result of the actions of these Defendants, and each of them, Plaintiff has suffered, and will

continue to suffer, general and special damages according to proof at trial.  Due to the

malicious, wanton, callous, reckless, and wrongful nature of the Defendants' misconduct as

herein alleged and described, Plaintiff is entitled to recover damages from Officer Kameron

Lee, City of Anderson, Fire Chief Lowe, and Anderson Fire Protection District, and shall

seek punitive damages as according to proof at trial.

52.  In spite of McMillan's nolo contendere plea in connection with his arrest, a

judgment in favor of McMillan in this § 1983 suit would not invalidate the criminal

judgement since Officer Lee's pulling McMillan's wallet and inspection of McMillan's

driver's license had no bearing on the arrest of McMillan made by Fire Chief Lowe.  Officer

Lee was enlisted by Fire Chief Lowe for the transport of McMillan. [5]

<u>**SECOND CLAIM FOR RELIEF**</u>

**Violation of Constitutional Rights - 42 U.S.C.  1983**
**Fourteenth and Fourth Amendments – Seizure, Cruel and**
**Unusual Punishment, Deliberate Indifference,.**

**Torture Inflicted by Officer Kameron Lee on McMillan in Police Cruiser**
**As to Officer Kameron Lee, City of Anderson, and DOES 1 through 50.**

53.    Plaintiff hereby incorporates by reference all other paragraphs of this complaint

as if set forth in full, including more specifically paragraphs 1 through 49, and 51 through

52 .

54.    McMillan is informed and believes and on that basis alleges that Officer

Kameron Lee was at all relevant times mentioned herein employed as a peace officer by the

City of Anderson, Anderson, California in the Anderson Police Department and was acting

in that capacity under color of law.  Fire Chief Lowe was present as an integral participant

---

[5] See **Heck v. Humphrey**, 512 U.S. 477, 487 (1994) Plaintiff's success would not affect a criminal judgment.

1  colluding with Officer Kameron Lee, acting under of color of law, and was at all relevant

2  times mentioned herein employed by the Anderson Fire Prevention District. The facts

3  demonstrate that both Officer Lee and Fire Chief Lowe had acted in concert against

4  McMillan with the unlawful intent to pressure McMillan into signing the citation with its

5  bogus charges at the time McMillan was forced into the police cruiser intending to cause

6  discomfort leading to McMillan's foreseeable injuries.  Their actions were not a lot different

7  from twisting McMillan's arm in an attempt to get McMillan to sign the citation with its

8  bogus charges.   Such conduct comprises an unreasonable use of force, and constitutes a

9  seizure according to the Fourth Amendment to the United States Constitution according to

10  *Graham v. Connor*, 490 U.S. 386 (1989).

11       55.   Plaintiff hereby incorporates by reference paragraph 11 through 19 wherein the

12  details of Defendant Officer Kameron Lee's wrongful and outrageous intentional infliction

13  of pain and injury inflicted on McMillan for the purpose of convincing McMillan to sign the

14  citation is described.  At the time of Officer Kameron Lee's conduct, the law was so clearly

15  established that any law enforcement officer in Officer Kameron Lee's circumstances would

16  have known his conduct violated McMillan's rights under the United States Constitution.

17  Due to the malicious, wanton, callous, reckless, and wrongful nature of the Defendant

18  Officer Kameron Lee's misconduct as herein alleged and described, Plaintiff is entitled to

19  recover damages against Officer Kameron Lee, City of Anderson, Fire Chief Lowe, and

20  Anderson Fire Prevention District, and shall seek, punitive damages.

21                    **THIRD CLAIM FOR RELIEF**

22       **Violation of Constitutional Rights - 42 U.S.C.  1983**
         **Fourteenth and Fourth Amendments – Search, Seizure, Cruel and**
23              **Unusual Punishment, Deliberate Indifference.**

24       **Torture Inflicted on McMillan by Fire Chief Lowe in Police Cruiser**
         **As to Fire Chief Steve Lowe and Anderson Fire Prevention District,**
25                    **and DOES 1 through 50.**

26       56.  Plaintiff hereby incorporates by reference paragraphs 1-49, 51-52, and 54 and

27  55.

28       57.   McMillan is informed and believes and on that basis alleges that Fire Chief

1   Lowe was at all relevant times mentioned herein employed as a Fire Chief by the Anderson

2   Fire Protection District in Anderson acting under color of law.

3       58.  Plaintiff hereby incorporates by reference paragraph 11 through 19 wherein the

4   details of Defendant Fire Chief Lowe's conspiracy, approval and participation with Officer

5   Kameron Lee in the confinement of McMillan are set out. At the time of Fire Chief Lowe's

6   conduct, the law was so clearly established that any law enforcement officer in his

7   circumstances as an integral participant would have known his conduct violated McMillan's

8   rights under the United States Constitution.

9       59.  Due to the malicious, wanton, callous, reckless, and wrongful nature of the

10  Defendant Fire Chief Lowe's misconduct and participation in McMillan's detention in the

11  police cruiser as herein alleged and described, Plaintiff is entitled to recover damages, and

12  shall seek, punitive damages.

13

14              **FOURTH CLAIM FOR RELIEF**
                **Violation of Constitutional Rights - 42 U.S.C.  1983**
15          **Fourteenth and Eighth Amendments – Deliberate Indifference.**

16          **Denial of Prescription Medications and medical care by**
                **Jail Nurses Linda Smith, and Amanda Ream.**
17
                **AS to Jail Nurses Linda Smith, and Amanda Ream,**
18              **CALIFORNIA FORENSIC MEDICAL GROUP, INC.,**
                **Jail Captain DAVE KENT,  Shasta County Sheriff-Coroner**
19      **TOMAS M. BOSENKO, COUNTY OF SHASTA, and DOES 1 through 50.**

20      60.    McMillan is informed and believes that at all relevant times mentioned herein

21  and upon that basis alleges that Jail Nurses Linda Smith, and Amanda Ream, were employed

22  at the Shasta County Jail by contract with CFMG between with the Sheriff's Department or

23  the County of Shasta with the duty of administering to the medical needs of the prisoners

24  incarcerated in the Shasta County Jail, and were subject to the direction and control of Shasta

25  County Sheriff-Coroner Thomas M. Bosenko who was employed by the County of Shasta to

26  operate and oversee the operation of  the Shasta County Jail.  Within the Sheriff's

27  administration of the jail, Captain Dave Kent was directly in charge of jail operations.

28  Plaintiff alleges on information and belief that both breached their administrative,

1  constitutional duties by way of deliberate indifference to assure the medical needs of the

2  prisoners were met.  The neglect of its obligations to the jail prisoners by CFMG resulted in

3  inadequately trained and dismissive Jail Nurses Linda Smith and Amanda Ream failing to

4  provide McMillan his prescribed medications all of which led to the serious hallucinations

5  experienced by McMillan caused by out of control high blood sugar, blood like syrup.

6       61.    Plaintiff hereby incorporates by reference paragraphs 20 through 35 wherein the

7  details of Jail Nurses Linda Smith and Amanda Ream respective breaches of their duty to

8  administer to the medical needs of McMillan are set forth.   Both nurses declined to provide

9  prescribed medicinal drugs for treatment of serious, life threatening diseases suffered by

10  McMillan.  Defendant California Forensic Medical Group, Inc., is liable for such actions as

11  they occurred within the course and scope of the nurses employment. McMillan suffered

12  injury from lack of his prescribed diabetic medications when afflicted with visual

13  hallucinations.  Plaintiff seeks damages for the harm inflicted and the willful violation of his

14  right to preventive treatment of his serious medical conditions.

15       62.    Due to the malicious, wanton, callous, reckless, and wrongful nature of the Jail

16  Nurses' misconduct as herein alleged and described, Plaintiff is entitled to recover damages,

17  and shall seek, punitive damages against each.  Further, due to deliberate indifference to the

18  failings of the Jail Nurses Linda Smith and Amanda Ream, Plaintiff seeks damages against

19  Thomas M. Bosenco, Dave Kent, CFMG, and the County of Shasta.

**FIFTH CLAIM FOR RELIEF**

**Fourteenth and Eighth Amendment – Cruel and
Unusual Punishment, Deliberate Indifference.
As to Shasta County Sheriff THOMAS M. BOSENKO,
Jail Captain DAVE KENT, and DOES 1 through 50.**

24       63.    Plaintiff hereby incorporates by reference paragraphs 1 through 49.

25       64.    McMillan alleges that prisoners including Plaintiff, in the Shasta County Jail

26  holding rooms are abused by being forced to sleep on cold concrete (benches or floor)

27  without significant cushion for how ever long they are held in the holding room.

28       65.    McMillan alleges he was held more than 24 hours in a holding room.

-24-

66.   Due to the malicious, wanton, callous, reckless, and wrongful nature of Shasta County Sheriff-Coroner Thomas M. Bosenko's and that of Jail Captain Dave Kent's indifference to the abusive holding room conditions as mistreatment of the prisoners subject to the conditions including that of McMillan as herein alleged and described, Plaintiff is entitled to recover damages, and shall seek, punitive damages.

### SIXTH CLAIM FOR RELIEF

**Fourteenth Amendment - Judicial Deception, Fabrication of Evidence**

**(Deception in the Presentation of Evidence to the Superior Court, Failure to Preserve Evidence)**
**As to Defendant Lowe, and Does 1 through 50, inclusive**

67.   Plaintiff incorporates the above allegations, in their entirety, as though fully set forth herein.

68.   At all relevant times alleged herein, the right to be free from judicial deception in criminal proceedings was clearly established such that any reasonable government official in Defendants' situation and circumstances would know that it was unlawful to lie, fabricate evidence, or suppress material exculpatory evidence in criminal proceedings. The Fourteenth Amendment protects against being subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the defendant.

69.   On or about March 10, 2019, Defendant Lowe's "Investigative Narrative" was provided to the Shasta County Superior Court. At the time of submission, Defendant Lowe intended for the Shasta County Superior Court to accept his "Investigation Narrative" into evidence and to rely on the statements therein in making important decisions regarding McMillan. Moreover, Defendant Lowe knew this narrative would be used at Plaintiff's criminal arraignment and relied upon by the Court as truthful, honest, accurate, and complete. At all relevant times, on information and belief, it was Defendant Lowe's intent that this narrative would be used to criminally prosecute Plaintiff.

70.   Defendant Lowe submitted numerous false statements to the Shasta County Superior  Court to support McMillan's criminal arraignment. In the narrative, Lowe

1  deliberately fabricated evidence of conversations that never occurred. Moreover, Lowe

2  falsely indicated that he had personally participated in events which either never happened,

3  or which he did not participate in in any way, i.e., he was not present and did not witness the

4  particular event and hence had no knowledge of whether or not the particular event actually

5  happened.

6      71.  In the context of a criminal proceeding, the constitutional right to be free from the

7  knowing presentation of false or perjured evidence is clearly established. *Devereaux v.*

8  *Abbey*, 263 F.3d 1070, 1074-1076 (9th Cir. 2001). Indeed, there is a clearly established

9  constitutional due process right not to be subjected to criminal charges on the basis of false

10  evidence that was deliberately fabricated by the government. *Id.* at 1074-75.

11      72.  Specifically, among many other things, Lowe falsely stated that:

12          a.    That McMillan was burning diesel and that McMillan admitted to

13                burning diesel, both of which were outright fabrications. No diesel was

14                ever present in the backyard, let alone burned that evening.

15          b.    That Lowe had informed McMillan of the specific provisions and

16                alleged violations but that conversation never occurred. Lowe only

17                presented a citation to McMillan and told him to sign it without

18                explanation.

19          c.    That McMillan had consented to Lowe entering the backyard and that

20                Lowe had personally inspected the backyard. But, this never occurred.

21                Indeed, Lowe never set foot in the backyard.

22          d.    That Lowe had informed McMillan that signing the citation was not an

23                admission of guilt but a promise to appear. That conversation never

24                occurred.

25          e.    That "An odor of gasoline and a burning smell were noticeable from the

26                front of the residence." Indeed, the wind was blowing away from the

27                front of the house that evening. No such odor or smell would have been

28                detectable from the firemen's location when they initially arrived.

1                 Indeed, by the time the firemen and Lowe arrived, there was no fire.

2                 There were only three small metal 8 oz coffee cans near each other

3                 sitting on the bottom at about 6ft depth of a nearly empty large concrete

4                 swimming pool (50 ft x 25 ft x 4 to 10 ft).

5        f.     That "McMillan refused to identify himself." Indeed, McMillan

6                 provided his name multiple times. McMillan also provided his home

7                 address in San Diego.

8        g.     That Lowe personally observed the backyard, the pool, and the three

9                 cans at the bottom of the pool. Lowe never entered the backyard that

10               evening, let alone made any of these observations.

11     The above statements do not encompass the entirety of the deceptive statements

12  submitted to the Shasta County Superior Court by Lowe.

13     73.  "No official with an IQ greater than room temperature in Alaska" could claim that

14  he or she did not know that judicial deception and filing false statements in court reports

15  violates both state and federal law. *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1118 (9th

16  Cir. 2017).

17     74.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered and

18  will continue to suffer physical, mental and emotional injury, all to an extent and in an

19  amount subject to proof at trial.

20     75.  Plaintiff is informed and believes and thereon alleges that Defendants

21  acted with malice and with the specific intent to cause injury to Plaintiff or acted with a

22  willful, knowing, and conscious disregard for Plaintiff's rights in a despicable, vile and

23  contemptible manner. Therefore, Plaintiff is entitled to an award of punitive damages for the

24  purpose of punishing these Defendants, and each of them, in order to deter them, and others,

25  from such conduct in the future.

26  ///

27  ///

28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### SEVENTH CLAIM FOR RELIEF

### 42 U.S.C. Sec. 1983 -- *Monell*-Related Claims

### As to the City of Anderson, and Shasta County, and DOES 1 through 50.

76.  Plaintiff hereby incorporates by reference this paragraph in all other paragraphs of this Complaint as if set forth in full.  Defendants City of Anderson and the County of Shasta (collectively, "Entity Defendants"), are each a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability under *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

77.  Each of the Entity Defendants had a duty to Plaintiff to establish, implement, and follow policies which confirm and provide the protections guaranteed Plaintiff under the United States Constitution. Said Entity Defendants also had the duty to use reasonable care to select, assign, supervise, train, and review the activities of all their respective agents, so as to protect Plaintiff's constitution rights and to avoid causing the injuries and damages alleged herein.  Based on the duties charged to each of the respective Entity Defendants, they knew or should have known of the obvious need to establish customs, policies and practices to protect Plaintiff from suffering the injuries and damages herein alleged. Entity Defendants established policies that served as the moving force behind the violations herein alleged, or alternatively, were deliberately indifferent to the need to establish proper policies and procedures to avoid the same. Entity Defendants, and each of them, established the following policies, procedures, customs, or practices which were the moving force behind the violations alleged:

a. The policy, custom, or practice of placing persons who refuse to produce identification under arrest, with the intention of searching such persons' bodies, papers, and effects for such identification, without a warrant, and in the absence of exigent circumstances, or knowingly aiding and abetting the same;

-28-

b. The policy, custom, or practice of inflicting pain and mental anguish in an effort to coerce persons to sign citations issued by the Anderson Fire Prevention District, or knowingly aiding and abetting the same;

c. The policy, custom, or practice of failing to diligently obtain medical information regarding persons incarcerated at the Shasta County Jail and/or refusing to administer prescribed medication to such inmates; and

d. The policy, custom, or practice of abusing inmates of the Shasta County Jail by overcrowding, forcing them to sleep on cold concrete (benches or floor) without significant cushion for however long they are held in the holding room, without providing bunks, in unsanitary and crowded conditions. (This list is not exhaustive due to the pending nature of disclosure and discovery. Plaintiff may seek leave to amend this pleading as more information becomes available.)

78. Entity Defendants, and each of them, breached their respective duties and obligations to Plaintiff by failing to establish, implement, and follow proper Constitutional policies, customs, and procedures and by failing to properly select, supervise, train, and control their respective agents and employees regarding the same. Each of the Entity Defendants knew, or should have known, that by breaching the above-mentioned duties and obligations, the failure to implement proper policies and procedures would cause Plaintiff to be injured and damaged, and were deliberately indifferent to the need to do so.

79. These actions and/or inactions were the moving force behind, and the direct and proximate cause of Plaintiff's injuries as alleged herein. As a result, Plaintiff has suffered general and special damages, to an extent and in an amount to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**

***Monell*-Related Claims - Deprivation of Constitutional Rights
As to Defendant Anderson Fire Protection District**

80. Plaintiff incorporates the above allegations of fact and law as though fully set forth herein.

81.  Defendant Anderson Fire Protection District, including through its entity Anderson Fire Department, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the Fourteenth Amendments. This includes, without limitation, the protection of the right to both substantive and procedural due process as alleged herein above.

82.  Defendant Anderson Fire Protection District also had a duty to use reasonable care to select, assign, supervise, train, control, and review the activities of all their agents, officers, employees, and those acting under them, including within Anderson Fire Department, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

83.  Moreover, based on the duties charged to Defendant Lowe, including the responsibility to present evidence and recommendations to the Superior Court – a court with power to adjudicate substantial rights, especially those associated with criminal trials. The Fire Protection District and its policymaking officials knew or should have known of the need to establish the customs, policies, and practices, training and disciplinary norms required to protect the aforementioned civil rights of persons with whom their agents regularly came into contact – and to adequately train its employees on constitutionally appropriate customs and practices.

84.  Defendant Anderson Fire Protection District established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by Lowe, and DOES 1-50, when they violated Plaintiff's constitutional rights by engaging in deception in the presentation of evidence to the Shasta County Superior Court and unconstitutional fabrication of evidence against Plaintiff, among other things.

85.  At the time of the underlying events, the regularly established customs and practices of the Anderson Fire Protection District and the Anderson Fire Department that Lowe and DOES 1-50 followed, adhered to, complied with, and carried out, were the moving force, that is, the actual, direct, and proximate cause of the violations of Plaintiff's constitutional rights including, but not limited to:

      a.    The custom and/or practice of including false, inaccurate, exaggerated, misleading, and/or untrue factual statements in the documents and/or reports filed with the Superior Court.

      b.    The custom and/or practice of suppressing and/or omitting known exculpatory evidence from the documents and/or reports filed with the Superior Court.

      c.    The custom and/or practice of permitting an employee to sign a document and/or narrative and/or court report without personal knowledge as to whether the statements made therein were complete and/or true, in an effort to bolster the credibility of the document and/or report.

86.  When Defendants Lowe, and DOES 1-50, and each of them, engaged in deception in the presentation of evidence to the superior court, they were acting pursuant to and in accordance with the Fire Protection District's regularly established customs and/or practices.

87.  On information and belief, the Fire Protection District's employees engaging in deception in the presentation of evidence to the Shasta County Superior Court, as alleged herein, was not an isolated incident specific to Plaintiff's circumstances or the circumstances of this particular case. Instead, the District and its employees regularly include false statements, and/or suppress known exculpatory evidence, in reports or other documents filed with the court. Yet, the Anderson Fire Protection District deliberately turned a blind eye to the problem and has intentionally refrained from taking any reasonable steps to rectify it. This marked and intentional failure by the Anderson Fire Protection District has permitted

the pernicious custom of presenting deceptive evidence to the Superior Court in criminal proceedings to persist for many, many years and has resulted in the Plaintiff herein being harmed as a result.

88.  On information and belief, the Anderson Fire Protection District has engaged in each of the customs and/or practices identified above on an ongoing and continuous basis for years and continues to engage in these customs and practices on an ongoing and daily basis – even to this day.

89.  On information and belief, the Anderson Fire Protection District regularly receives and/or is aware of complaints leveled against its employees, claiming that the employees are engaging in deception in the presentation of evidence in the Superior Court.

90.  The Anderson Fire Protection District never investigates or disciplines its employees, including Lowe, and DOES 1-50, who engage in deception in the presentation of evidence to the Superior Court and/or engage in the practices alleged herein above. The Anderson Fire Protection District consistently fails to investigate or discipline its employees who are involved in these sorts of constitutional violations so that violations of citizen's constitutional rights, in the mode and manner alleged herein, have not only become accepted, but are customary.

91.  The Anderson Fire Protection District did not investigate or discipline Defendants Lowe, and DOES 1-50, for making false statements, and/or suppressing known exculpatory evidence in the various reports or other documents they filed in the Superior Court in the underlying criminal proceedings.

92.  The Anderson Fire Protection District refuses to admit that its employees commit a constitutional violation when they make false statements, and/or suppress known exculpatory evidence, in reports or other documents filed in the Superior Court – and continues to do so. In fact, to this day, the County denies that Defendants Lowe, and DOES 1-50, violated Plaintiff's rights when they made false statements, and/or suppressed exculpatory evidence, in reports or other documents filed in the Superior Court. The Anderson Fire Protection District ratified and/or approved the inclusion of false statements,

and/or suppression of known exculpatory evidence, in reports or other documents filed in the Superior ourt proceedings identified herein.

93.   The Defendant Anderson Fire Protection District is aware that its employees regularly, as a matter of custom and practice, make false statements and/or suppress known exculpatory evidence in reports or other documents they file in the Superior Court. Yet, Defendant Anderson Fire Protection District made a knowing and conscious decision to refrain from promulgating a policy and recurrent training to prevent such misconduct, and has consistently and knowingly failed to provide any training to their employees to inform them of the rights of persons to not be lied about in court reports and the requirement that all exculpatory evidence is presented to the Superior Court.

94.   Moreover, the Anderson Fire Protection District has consistently and intentionally failed and refused to discipline its workers even when it is proven that they lied in their filings with the court.

95.   The Defendant Anderson Fire Protection District's decision to disregard these constitutional protections in the face of a known need for such prophylactic policies to prevent the specific misconduct alleged herein above, i.e., the known need for a specific policy prohibiting the aforementioned misconduct, is itself a "policy" decision which constitutes a "policy" of deliberate indifference to the regularly established unconstitutional customs and practices that have been permitted to persist over the years.

96. This policy of deliberate indifference, and the lack of prophylactic policies, training, and or discipline in the face of a known need for such policies, training, and discipline was a substantial factor – that is, the moving force, that caused the Plaintiff harm, in that Defendants Lowe, and DOES 1-50, followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures of Anderson Fire Department when they made false statements and/or suppress known exculpatory evidence, in reports or other documents filed in the court and deliberately fabricated evidence against Plaintiff – none of which was constitutionally permissible.

97.  Plaintiff is informed and believes, that Defendant Anderson Fire Protection District failed to establish, adopt, and/or implement policies, procedures, and training regarding the constitutional protections afforded to a person by the Fourteenth Amendment. Without such policies, procedures, customs and/or practices in place, the Anderson Fire Protection District's employees were allowed and permitted to engage in conduct that was clearly and directly in violation of Plaintiff's constitutional rights as more specifically set out in the allegations above.

98.  Defendant Anderson Fire Protection District's failure to adopt such protective policies and training was the moving force behind the violations of Plaintiff's constitutional rights. Such failures include, but are not limited to:

    a.    The Anderson Fire Protection District did not have a written policy, procedure, custom, practice and/or recurrent training delineating the constitutional protections afforded to a person by the Fourteenth Amendment – including, but not limited to, the right to not be lied about in court reports and other documents filed with the Superior Court, and the right to not be faced with deliberately fabricated evidence to support criminal allegations.

    b.    The Anderson Fire Protection District did not have a written policy, procedure, custom, practice and/or recurrent training instructing that an employee must only claim personal knowledge of events in which they personally participated.

    c.    The Anderson Fire Protection District did not have a written policy, procedure, custom, practice and/or recurrent training instructing that an employee is precluded from including false statements in documents or reports to the Superior Court.

    d.    The Anderson Fire Protection District did not have a written policy, procedure, custom, or practice requiring its employees to be complete, honest, and accurate in their reports to the court.

  e. The Anderson Fire Protection District did not have a written policy, procedure, custom, or practice requiring its employees to have personal knowledge of the facts and/or statements made in a narrative, document, and/or report filed with the Superior Court, when attesting to the veracity of those allegations, facts, and/or statements.

  f. The Anderson Fire Protection District did not have a written policy, procedure, custom, or practice requiring its employees to conduct an independent investigation to determine whether the allegations, facts, and/or statements in a narrative, document, and/or other report were true, before attesting to the veracity of those allegations, facts, and/or statements.

99. By deliberately refraining from promulgating any of the aforementioned policies, procedures, customs, practices and/or training, the Anderson Fire Protection District permitted the aforementioned basic policy decisions to be made by both the fire chief as well as the lower level employees in the field. As a result, the Defendant Anderson Fire Protection District's "official" policy, custom, and/or practice – as established, adopted, and implemented by Defendants Lowe and DOES 1-50 – was to make false statements and/or suppress known exculpatory evidence in reports and documents filed with the Superior Court, and to continue to deliberately fabricate evidence or otherwise cause the continued criminal detention of a person even thought it was known by these Defendants that there was no true factual basis to do so.

100. These policies, customs, and/or practices – that disregard the Plaintiff's constitutional protections – were a substantial factor in causing harm to the Plaintiff.

101. The state of the law regarding the constitutional protections afforded to a person by the Fourteenth Amendment was clearly established well before 2019. As such, the Defendant Anderson Fire Protection District knew long before 2019 that its employees required recurrent training on the constitutional protections afforded to a person under the Fourteenth Amendment.

102.   Despite this knowledge, the Defendant Anderson Fire Protection District deliberately failed to train or, alternatively, deliberately failed to provide recurrent and updated training to its employees on the following constitutional protections:

a.   That an employee must be truthful, honest, and accurate when reporting and/or presenting evidence to the Superior Court;

b.   That an employee is precluded from lying to and/or including false statements in documents or reports to the Superior Court;

c.   That an employee is precluded from lying to and/or including false statements in documents and/or reports that will be relied upon by law enforcement and/or the District Attorney's office;

d.   That quotation marks can only be used when the speaker's words are being reproduced verbatim;

e.   That an employee must personally participate in events for which he or she claims personal knowledge; and

f.   That an employee must not deliberately fabricate conversations and/or evidence for the purpose of securing a criminal indictment and/or conviction.

103.   The Anderson Fire Protection District does not provide training on all policy updates and does not expect its employees to know every policy or procedure.

104.   Defendant Anderson Fire Protection District's deliberate failure to train its fire department employees on these established constitutional protections was a substantial factor in causing the Plaintiff's harm, in that these employees were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when the fire chief made false statements and/or suppressed known exculpatory evidence in reports and documents filed with the Superior Court.

105.   The practice of turning a deliberate blind eye to the need for further or adequate training and/or discipline by ignoring repeated violations of the rights of individuals with whom Anderson Fire Department employees can regularly be expected to come into contact,

1   by failing and/or refusing to implement a practice of regular and adequate training and/or

2   supervision, and/or failing to train and/or supervise its officers, agents, employees and state

3   actors, in providing and ensuring compliance with the constitutional protections guaranteed

4   to individuals, including those under the Fourteenth Amendments to the United States

5   Constitution was the moving force that caused the violation of Plaintiff's rights as alleged

6   herein above.

7        106.   Defendant Anderson Fire Protection District, including by and through its

8   entity Anderson Fire Department, and its policymaking officials, breached its duties and

9   obligations to Plaintiff by, but not limited to, failing to establish, implement and follow the

10   correct and proper constitutional policies, procedures, customs and practices; by failing to

11   properly select, supervise, train, control, review, and discipline its agents and/or employees in

12   relation to their compliance with constitutional safeguards; and by deliberately permitting

13   Defendants Lowe, and DOES 1-50, to engage in the unlawful and unconstitutional conduct

14   as herein alleged, with a total and deliberate indifference to Plaintiff's known rights.

15        107.   Defendant Anderson Fire Protection District knew, or should have known, that

16   by breaching the above-mentioned duties and obligations that it was reasonably foreseeable

17   that its agency's policies, practices, customs, and usages would, and did, directly cause

18   Plaintiff to be injured and damaged by Defendant Anderson Fire Protection District's

19   wrongful customs and practices, and/or its deliberate lack of official policies to prevent the

20   known customs and/or practices from persisting.

21        108.   These actions, and/or inactions, of the Defendant Anderson Fire Protection

22   District were the moving force behind, and direct and proximate cause of Plaintiff's injuries.

23   As a result, Plaintiff has sustained general and special damages, to an extent and in an

24   amount to be proven at trial.

25   / / /

26   / / /

27   / / /

28   / / /

**STATE CLAIMS FOR RELIEF**

**CLAIMS FOR DAMAGES WERE SUBMITTED AS REQUIRED**

**BY STATE CODE SECTIONS §§ 910 *et seq*.**

109.   Paragraphs 5 through 29 above are incorporated by reference as if set forth in full here.   On information and belief McMillan alleges that at all times mentioned herein:

      a.  Shasta County Jail in Redding, California was and remains a department of the County of Shasta, and

      b.  The Shasta County-Coroner Sheriff manages the Shasta County Jail by agreement with the County of Shasta, and

      c.  The Shasta County Sheriff-Coroner formulates the Shasta County Jail rules, policies, and  procedures which are implemented at his direction by the Deputy Sheriffs running and managing the day to day operation of the Shasta County Jail including that of medical staff, and

      d.  Thomas M. Bosenko was the Shasta County Sheriff - Coroner at all times mentioned in this complaint but retired in December 2019, and

      e.  Officer Kameron Lee, acting as a peace officer subject to department policy, direction, and practice as an employee of the Anderson Police Department in Anderson, California which was and remains a city department where operations and overall policy are ultimately subject to the control and direction of the City of Anderson, and

      f.  Fire Chief Lowe, acting as a peace officer subject to department policy, direction, and practice as an employee of the Anderson Fire Protection District in Anderson, California where operations and overall policy are ultimately subject to the control and direction of the Anderson Fire Protection District, an independent agency.

110.   Based on the allegations in paragraphs "a ." through "f ." above, claims for damages were mailed within 6 months of March 7, 2019, by plaintiff.  The claims were submitted pursuant to the provisions of California Government Code §§910 et seq. More than forty-five days elapsed after the submission of the claims with no response from the City of Anderson and the Anderson Fire Prevention District; the claims are therefore deemed

1    rejected.  The County of Shasta rejected the claim against the county by written notice mailed

2    October 16, 2019.

3                              **NINTH CLAIM FOR RELIEF**

4                    **False Arrest by Anderson Fire Chief Steve Lowe**.

5         111. In compliance with California Government Code § 910 McMillan served a claim

6    for money or damages against Fire Chief Steve Lowe and his employer the Anderson Fire

7    District for false arrest.

8         112.   Plaintiff with this reference incorporates every paragraph in this complaint in

9    this Ninth Claim for Relief.  More specifically Plaintiff directs attention to paragraphs 6-12

10   and 36-42 above.

11        113.   Upon signing an "Agreement on Release" in which McMillan was charged with

12   42400.2 ( c )HS and 148(A)(1) PC (see paragraph 11 plus foot note 1 on page 5 above) and

13   promised to appear at the Shasta County Superior Court on May 10, 2019 at 8:30 a.m. for

14   arraignment.  McMillan was released at about 2:30 a.m. on March 10, 2019.

15        114.  McMillan along with his attorney showed up at the appointed time and location

16   on May 10, 2019 only to discover that McMillan's arraignment on the charges by Fire Chief

17   Lowe were not listed as being heard by either Department 9's or 10's on the respective court

18   calender.

19        115.  Subsequently, on January 29, 2020 the Shasta County District attorney's office

20   served a criminal complaint whereby the charges by Fire Chief Lowe were superceded by

21   Section 41800/42400 of the Health and Safety Code dropping the charge of 148(A)(1) PC

22   altogether.

23        116.  The charges in the criminal complaint of January 29, 2019 were specified as a

24   charge of open burning of a petroleum product, off the mark as well.  A charge by someone

25   who had never seen the actual scene. There was no "open burning" of anything. Furthermore,

26   all charges were unsupported by Fire Chief Lowe's bogus "Investigative Narrative" he

27   offered in support of the charges. His "Investigative Narrative" contained little truth.

28

117.   Due to the malicious, wanton, callous, reckless and wrongful nature of Defendant Fire Chief Steve Lowe's misconduct as herein alleged and described, Plaintiff is entitled to recover damages, and shall seek punitive damages.

**TENTH CLAIM FOR RELIEF**

**Enhanced Claim for Elder Abuse for Torture of McMillan**
**As to Officer Kameron Lee, City of Anderson, Fire Chief Lowe,**
**and Anderson Fire Prevention District**

118.   Plaintiff hereby incorporates by reference paragraphs 1 through 49.

119.   McMillan alleges that at all times mentioned herein Officer Kameron Lee was a peace officer in that capacity as an employee of the City of Anderson police department subject to department policy, direction, and practice.

120.   McMillan further alleges that at all times mentioned herein Fire Chief Lowe was acting on behalf of the Anderson Fire Prevention District, an independent entity.

121.   The facts set out in the above statement of facts are incorporated by reference herein establish that James I. McMillan was older than 65 years old at the time of the conduct described in the above statement of facts, and was physically abused by Officer Kameron Lee acting in concert and colluding with Fire Chief Lowe when forced into the backseat of Officer Kameron Lee's Anderson Police car causing severe pain and injury all in violation of the Elder Abuse and Dependent Adult Civil Protection Act.  Further, McMillan was harmed by the acts of Officer Kameron Lee as described in the Statement of Facts above. Thus Officer Kameron Lee's and Fire Chief Lowe's conduct was a substantial factor in causing McMillan's harm. McMillan seeks damages for the harm inflicted on him which includes invasion of privacy, intentional infliction of pain, physical injury, mental suffering, emotional distress and humiliation.

122.   Further, plaintiff seeks the enhanced remedies of attorney fees and costs provided for in the California Elder Abuse and Dependent Adult Civil Protection Act against Officer Kameron Lee, City of Anderson, Fire Chief Lowe and the Anderson Fire Protection District.

/ / /

**ELEVENTH CLAIM FOR RELIEF**

**Enhanced Claim for Elder Abuse of McMillan**
**Failure to Provide Needed Medication, and Inhuman Sleeping Conditions in Cell.**
**As to Shasta County Sheriff-Coroner Thomas M. Bosenko.**

123.    Plaintiff hereby incorporates by reference paragraphs 3, 23 through 28, and 30 through 35 as if set forth in full.

124.    Plaintiff is informed and believes that the County of Shasta contracted with the Shasta County Sheriff-Coroner Thomas M. Bosenko to manage and run the Shasta County Jail.

125.    Plaintiff is informed and believes and based thereon alleges that Sheriff - Coroner Thomas M. Bosenko has a policy of ignoring pain and suffering inflicted on those in the holding cell due to inadequate, ineffective padding provided inmates such as Plaintiff who was forced to sleep on cold, hard concrete. McMillan experienced - sore spots and back pain - unwarranted pain and suffering in the Shasta County Jail cause by being forced to sleep on the cold hard concrete in one of the Jail's holding cells.

126.  Plaintiff is informed and believes and based thereon alleges that Sheriff Thomas M. Bosenko has a policy of minimizing the needs of inmates for prescribed medication. McMillan was causally denied his prescribed medication which treats his serious diseases by Jail Nurses Linda Smith, and Amanda Ream, thus putting McMillan unnecessarily at dangerous risk of very serious injury or death.  McMillan did in fact suffer consequences with the denial of his necessary prescribed medications for diabetes by Jail Nurses Linda Smith, and Amanda Ream, with the occurrence of visual hallucinations during and continuing after release from jail.

127.    Thus Sheriff Thomas M. Bosenko's policy was a substantial factor in causing McMillan's harm. McMillan seeks damages for the harm inflicted on him which includes negligent infliction of physical injury, physical suffering, and emotional distress.

128.    Plaintiff seeks the enhanced remedies of attorney fees and costs provided for in the California Elder Abuse and Dependent Adult Civil Protection Act against Sheriff-Coroner Thomas M. Bosenko.

## TWELFTH CLAIM FOR RELIEF

### Violation of the Bane Civil Rights Act [Cal. Civ. Code §51.2]

### As to Officer Kameron Lee, City of Anderson, Fire Chief Lowe, and Anderson Fire Prevention District and DOES 1-50

129.   Plaintiff incorporates all allegations above as if set forth in full.

130.   Civil Code section 51.2, also known as the Bane Civil Rights Act guarantees all persons within the state the right to be free from threats, intimidation, or coercion or attempts to interfere by threats, intimidation or coercion, with the exercise or enjoyment of any individual of rights secured by state law.

131.   The Bane Act does not require that defendant act with any discriminatory animus against a protected class so long as the acts alleged interfere with plaintiffs exercise of rights secured by law. See *Venegas v. County of Los Angeles* (2004) 32 Cal. 4th 820, 841-43.

132.   At all relevant times, plaintiff had a right to be free from false charges, mistreatment by police, mistreatment in Shasta County Jail including violations of state mandated holding cell requirements all resulting in discomfort, pain, suffering or injury of McMillan as alleged.

133.   Defendants interfered with those rights through threats, intimidation, and coercion, including through the unlawful arrest and detention of the plaintiff.

134   As a direct and legal result of defendants' conduct plaintiff suffered general and special damages and violation of his statutory and constitutional rights.

135. The misconduct of Officer Lee and Fire Chief Lowe was done with a conscious disregard of Plaintiff's rights and constitutes despicable and fraudulent conduct and was done with the intent to vex, injure or annoy Plaintiff such as to constitute oppression, fraud or malice under California Civil Code section 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

136.   Except for perhaps an award of punitive damages from which the County may be statutorily immune, the County is liable under the doctrine of respondeat superior for

1  Shasta County Sheriff-Coroner Thomas M. Bosenko 's failure to avoid the mistreatment of
2  McMillan in the Shasta County Jail. The County is also liable pursuant to sections 815.2 and
3  815.6 of the California Government Code.

4      137. The City of Anderson is liable under the doctrine of respondeat superior for the
5  conduct of Officer Lee. The City is also liable pursuant to sections 815.2 and 815.6 of the
6  California Government Code.

7      138. The Anderson Fire Protection District is liable under the doctrine of respondent
8  superior for the conduct of Fire Chief Lowe. The Fire Protection District is also liable
9  pursuant to sections 815.2 and 815.6 of the California Government Code.

10     139. Defendants acted in conscious disregard for plaintiffs rights.

11     140. Defendants' violation of the Bane Act entitles plaintiff to compensatory and
12 punitive damages, a $25,000 civil penalty, attorneys fees, and injunctive relief.

13     141. Plaintiff may also obtain injunctive relief pursuant to this cause of action.
14 Though the actual nature and scope of appropriate injunctive relief is not yet known, plaintiff
15 expects to request the following orders:

16     142. An order requiring the City of Anderson to train officers to respect the
17 constitutional rights of detainees and those arrested.

18     143. An order requiring the Anderson Fire Protection District to train its personnel to
19 respect the constitutional rights of detainees and those arrested, and not make outlandish
20 charges in citations and not fabricate facts in Investigative Reports.

21     144. An order of expungement or for a finding of actual innocence (or both) for
22 those convicted of violations based upon Investigative Reports by Anderson Fire Protection
23 District personnel found to contain fabrications, or material misrepresentations.

24     145. An order requiring that the criminal records of class members be adjusted
25 consistent with any expungements or findings of actual innocence resulting from the instant
26 litigation.

27     146. An order establishing a process of notifying and compensating individuals who
28 may have been wrongfully convicted.

**THIRTEENTH CLAIM FOR RELIEF**

**Negligence Per Se**

**As to Officer Kameron Lee, City of Anderson, Fire Chief Lowe, and Anderson Fire Prevention District and DOES 1-50**

147.   Plaintiff incorporates as if fully set forth herein, paragraphs 128-138 above.

148.   Defendants' violations of Cal. Civ. Code §§ 51, 51.7, 52.1 code sections constituted negligence per se.

149.  These statutes were designed to protect certain classes of person including plaintiff and those similarly situated from particular types of harm including from arbitrary and illegal arrest.

150.   Plaintiff was harmed and damaged by the violation of those statutes.

151.  The harms and damage suffered by plaintiff were of a nature and type that the statutes were designed to protect.

152.  As a proximate and legal result of defendants' breaches, plaintiff has suffered general and special damages exceeding the minimum jurisdiction of the court.

**FOURTEENTH CLAIM FOR RELIEF**
**Negligence**

**As to Officer Kameron Lee, City of Anderson, Fire Chief Lowe, and Anderson Fire Prevention District and DOES 1-50)**

153.   Plaintiff incorporates as if fully set forth herein, paragraphs 128-138 above.

154.   Defendants were negligent. Among other things defendants negligently arrested and prosecuted plaintiff on the basis of false allegations by Fire Chief Steve Lowe, failed to implement policies and procedures to ensure that prosecutions based upon false allegations don't occur and wrongful arrests are not undertaken by Anderson police and by Anderson Fire Protection District personnel.   Both the Anderson Police Department and the Anderson Fire Protection District have failed to properly train their respective personnel in the protections offered by the Bane Act and failed to implement policies and procedures to ensure that personnel comply with the law.

1    155.   As a proximate and legal result of defendants' breaches, plaintiff has suffered

2    general and special damages exceeding the minimum jurisdiction of the court.

3
**FIFTEENTH CLAIM FOR RELIEF**

4
**Violation of Mandatory Duties, Negligence, Negligence Per se**,
5    **As to Sheriff-Coroner Thomas M. Bosenko and County of Shasta.**

6    156.  Plaintiff alleges that the conditions did not meet the minimum standards for a

7    detention facility temporary holding cell or room as set forth in 24 CCR 1231.2, which

8    provides, in pertinent part as to which were violated:

9
    a.  Contain a minimum of 10 square feet (0.93 m2) of floor area per inmate:
10
11    The holding cell where McMillan was held was about 90 square feet.  At least
    one time during McMillan's time there, McMillan believes the number of
    detainees exceeded 9.
12
    b.  Be limited to no more than 16 inmates:
13
14    McMillan is informed and believes that a couple days or so prior to McMillan's
    detention more than 16 inmates were held in the holding cell. An inmate told
    McMillan that he had been in the holding cell more than one day and it was
15    crowded for a while maybe 20 inmates were stuffed into the holding cell.

16    c.  Maximize visual supervision of inmates by staff;

17    While McMillan was in the room, for a period of a few hours the visual
    supervision of inmates by staff was restricted by paper being place over the
18    observation window, right after McMillan watched an inmate screaming with 4
    deputies holding him down and soon dragging him off to the "cage."
19
20    d.  When located in a temporary holding facility, the cell or room shall be
    equipped with a bunk if inmates are to be held longer than 12 hours.

21    McMillan was kept in the holding cell for more than 24 hours.  There were no
    bunk beds provided, only thin blankets, one to a person.
22
23    157.  Defendants' breaches were a substantial factor in plaintiffs harm. As a proximate

    and legal result of defendants' breaches, plaintiff has suffered general and special damages
24
    exceeding the minimum jurisdiction of the court.
25
    / / /
26
    / / /
27
    / / /
28

**SIXTEENTH CLAIM FOR RELIEF**

**Negligence**

**As to County of Shasta, Bosenko, Captain Kent,
California Forensic Medical group, Nurse Smith, Nurse Ream and DOES 1-50**

158.   Plaintiff incorporates as if fully set forth herein, paragraphs 1-49, and 123 through 128 above.

159.   Defendants owed Plaintiff a duty to assess and care for him in light of his numerous medical problems, and the nature of the custodial relationship with plaintiff. They failed to do so.  They were aware of their duties, as demonstrated by the false charting of the medical records, identifying a set of vitals that was fabricated.  Defendants refused Plaintiff his needed medication, threw his needed medication in the trash, refused medication that was labeled as prescribed in his name and delivered by a family member.

160.   Defendants breached their duties imposed by statute to care for Plaintiff, imposed by California Civil Code section 1708, and breached the duty of care for medical care in the community of Shasta County with respect to providing medical care for Plaintiff. The breaches of such duty were a substantial factor in Plaintiff suffering temporary pain and suffering, and permanent injury.

161.   As a proximate and legal result of defendants' breaches, plaintiff has suffered general and special damages exceeding the minimum jurisdiction of the court.   The conduct was reckless, so grossly negligent, as to support a claim for punitive damages.  Defendants, excepting than County of Shasta, which is not liable for punitive damages, according to proof at trial, as their conduct satisfies the definition of malice, oppression, and fraud as defined in California Civil Code section 3294(a).

162.   Plaintiff seeks the enhanced remedies of attorney fees and costs provided for in the California Elder Abuse and Dependent Adult Civil Protection Act against Sheriff-Coroner Thomas M. Bosenko.

/ / /

## PRAYER

**WHEREFORE**, Plaintiff prays judgment against Defendants as follows:

1.   For general damages in an amount according to proof, within the jurisdictional limits of this court, and;

2.   For special damages in an amount according to proof, within the jurisdictional limits of this court, and;

3.   For punitive damages as against Defendants Officer Kameron Lee, City of Anderson, Fire Chief Steve Lowe, Anderson Fire Protection District,  Sheriff-Coroner Thomas M. Bosenko, Dave Kent, California Forensic Medical Group, Inc. (CFMG), Jail Nurses Linda Smith and Amanda Ream, and County of Shasta and;

4.    For costs of suit incurred herein, including attorney's fees pursuant to 42 U.S.C. section 1988, and;

5.    For the enhanced remedies of attorney fees and costs provided for in the California Elder Abuse and Dependent Adult Civil Protection Act against Officer Kameron Lee, Fire Chief Steve Lowe and Thomas M. Bosenko, and;

6.   For civil penalties and attorneys fees under California law.

7.   Plaintiff requests a Jury Trial pursuant to Local Rule 201 and the Federal Rules of Civil Procedure;

8.   For such other and further damages as provided by law, or such further relief as the court may deem just and proper.


Dated: August 10, 2020                                   /s/ James I. McMillan
                                                                      James I. McMillan, Esq.
                                                                      In propria persona

1  Certification and Closing Under Federal Rule of Civil Procedure 11,  by signing below, I

2  certify to the best of my knowledge, information, and belief that this complaint: (1) is not

3  being presented for an improper purpose, such as to harass, cause unnecessary delay, or

4  needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous

5  argument for extending, modifying, or reversing existing law; (3) the factual contentions

6  have evidentiary support or, if specifically so identified, will likely have evidentiary support

7  after a reasonable opportunity for further investigation or discovery; and (4) the complaint

8  otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office

9  with any changes to my address where case-related papers may be served. I understand that

10  my failure to keep a current address on file with the Clerk's Office may result in the

11  dismissal of my case.

12   Date of signing: August 10, 2020                          /s/ James I. McMillan